Thomas F. TWOMEY, Petitioner,

v.

NATIONAL TRANSPORTATION SAFETY BOARD, Donald D. Engen, Administrator, Federal Aviation Administration, Respondents.

No. 86–1939.

United States Court of Appeals, First Circuit.

Argued April 6, 1987.

Decided June 23, 1987.

---

management rights, unless said interpretation is expressly required by the provisions of this

Agrecment.

Karnig Boyajian, Boston, Mass., for petitioner.

Vicki S. Leemon, with whom Peter J. Lynch, Philadelphia, Pa., Manager, Enforcement Proceedings Branch, was on brief, for respondents.

Before CAMPBELL, Chief Judge, BREYER and SELYA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Thomas F. Twomey brings this petition for review of an order issued by the National Transportation Safety Board ("NTSB") affirming the initial decision and order of the Federal Aviation Administration ("FAA") revoking his airline transport pilot and other licenses. We uphold the NTSB's order.

On May 6, 1984, an FAA inspector monitoring a Delta Air Lines flight aboard which Twomey, a senior Delta captain, was to serve as pilot-in-command requested to inspect Twomey's pilot and medical certificates. Upon inspection, the FAA representative noted that Twomey's first-class airman medical certificate had expired on April 30, 1984.[1] Twomey did not undertake the flight as a required flight crewmember.

On or about May 7, 1984, Twomey applied in Boston, Massachusetts, to Dr. David E. Rosengard for a first-class medical certificate. On his application, Twomey made an entry reflecting that the application was made on April 30, 1984, and asked Dr. Rosengard to backdate the medical certificate. Dr. Rosengard agreed and issued the certificate with the April 30, 1984 date.

Twomey thereafter presented the certificate to his employer, Delta Air Lines, to demonstrate that he had had a valid and current medical certificate on flights he had made subsequent to April 30, 1984. Twomey had participated as a required crewmember on a number of Delta flights between May 1, 1984 and May 6, 1984.

After learning of the falsification, the administrator of the FAA concluded that any flights conducted between May 1, 1984 and May 6, 1984, were in violation of section 61.3 of the Federal Aviation Regulations ("FAR").[2] Moreover, the administrator determined that Twomey had made an intentionally false statement in his application for a medical certificate in violation of section 67.20(a)(1) of the FAR.[3] The administrator then proceeded to revoke

---

1. 14 C.F.R. § 61.23(a)(1) (1987) states as follows:

 (a) A first-class medical certificate expires at the end of the last day of—
 (1) The sixth month after the month of the date of examination shown on the certificate, for operations requiring an airline transport pilot certificate....
 A pilot-in-command of an aircraft must possess a first-class medical certificate. 14 C.F.R. § 121.437 (1987). The other two flight crewmembers of a commercial airliner—the copilot or first officer and the flight engineer or second officer—may fly with second-class medical certificates. *Id.*

2. 14 C.F.R. § 61.3 (1987) states as follows:

 (C) *Medical certificate.* Except for free balloon pilots piloting balloons and glider pilots piloting gliders, no person may act as pilot in command or in any other capacity as a required pilot flight crewmember of an aircraft under a certificate issued to him under this part, unless he has in his personal possession an appropriate current medical certificate issued under Part 67 of this chapter. However, when the aircraft is operated within a foreign country with a current pilot license issued by that country, evidence of current medical qualification for that license, issued by that

country, may be used. In the case of a pilot certificate issued on the basis of a foreign pilot license under § 61.75, evidence of current medical qualification accepted for the issue of that license is used in place of a medical certificate.

3. 14 C.F.R. § 67.20(a)(1) (1987) states as follows:

 (a) No person may make or cause to be made—
 (1) Any fraudulent or intentionally false statement on any application for a medical certificate under this part;
 (2) Any fraudulent or intentionally false entry in any logbook, record, or report that is required to be kept, made, or used, to show compliance with any requirement for any medical certificate under this part;
 (3) Any reproduction, for fraudulent purpose, of any medical certificate under this part;
 (4) Any alteration of any medical certificate under this part.
 (b) The commission by any person of an act prohibited under paragraph (a) of this section is a basis for suspending or revoking any airman, ground instructor, or medical certificate or rating held by that person.

Twomey's medical, pilot, flight engineer and ground instructor certificates pursuant to his authority under 49 U.S.C. §§ 1429(a) and 1485(a) (1982) to issue emergency orders whenever, in the administrator's opinion, "an emergency requiring immediate action exists in respect of safety in air commerce."

Twomey administratively appealed pursuant to 49 U.S.C. § 1429. After an evidentiary hearing, an administrative law judge sustained the emergency order of revocation. Twomey appealed further to the National Transportation Safety Board which affirmed the FAA's order.

In this petition for review, Twomey raises three issues which we discuss below.

## I.

Twomey argues that the backdating of his application for renewal of a pilot's first-class medical certificate did not constitute an intentionally false statement of a *material* fact. While section 67.20(a)(1) does not in so many words require the falsehood to relate to a "material fact," it is undisputed that such is required. *See, e.g., Cassis v. Helms,* 737 F.2d 545, 546 (6th Cir.1984). In denying the materiality of the false date, Twomey asserts that it did not relate to his physical or psychological condition and hence lacked medical significance. Twomey says that in every case where the NTSB has previously found that the misstated or concealed fact was material, the fact carried some medical significance. He asserts that the FAA has never questioned his physical or mental health and, therefore, the false date on the application had no adverse effect on public safety.

The NTSB's conclusion of materiality was as follows:

> In the instant case, respondent's conspiracy with Dr. Rosengard to backdate the airman medical certificate that was issued May 7, 1984, was for the purpose of using the certificate, backdated to April 30, to deceive both his employer, Delta, and the FAA by falsely claiming that, during the flights that were conducted for Delta between May 1, 1984 and May 6, 1984, respondent was proper-

ly certificated when, in actuality, his certificate had expired. The Board therefore concludes that the false representation was in reference to a material fact.

 We think the NTSB was well within its authority to reach this conclusion. For a statement to be material in situations like the one before us, it need only have a natural tendency to influence, or be capable of influencing, a decision of the agency in making a required determination. *Cassis v. Helms,* 737 F.2d at 547; *Poulos v. United States,* 387 F.2d 4, 6 (10th Cir.1968). Regardless whether Twomey's health was or was not perfect from April 30 on, the false backdate could influence the FAA's determination whether he was qualified under its rules and regulations to fly as pilot-in-command during the period May 1–6.

In *Cassis* the court found that a pilot's false entries about 150 hours of flight time in his logbook were material where the logbook was required as part of an application for an airline transport pilot certificate, even when the pilot had enough hours to fulfill the 1,500 requirement without the false 150 hours. 737 F.2d at 547. The court found that since the pilot did not inform the FAA which entries were accurate and which were false, "the false entries were capable of influencing the ultimate decision about whether [the pilot] had 1500 hours of flight experience." *Id.* Moreover, the court found that the false entries could be used by the pilot to show compliance with other FAA flight experience requirements.

The situation here is analogous to that in *Cassis.* The NTSB was entitled to conclude that the date of the application formed a critical element of the medical certificate's validity and, thus, of the applicant's qualifications for flight at a particular time. The date of the application here was material to the date the doctor wrote on the medical certificate and this, in turn, was material to the FAA's decisions concerning Twomey's qualifications for flight.

Had Twomey placed the true date of May 7 on the application, thus receiving a medi-

cal certificate of like date, it would have been apparent to the FAA that the flights Twomey conducted between May 1 and May 6 were in violation of FAA regulations requiring a pilot-in-command to have a current medical certificate. 14 C.F.R. § 67.-3(c) (1987). Thus, the backdating of the application had the capability of making the FAA believe that Twomey had always held a current medical certificate and therefore of preventing the agency, as well as his employer, from taking action against him. We have no question, therefore, that the false date on the application was a material misstatement.

## II.

The FAA also found Twomey in violation of section 61.3 of FAR by acting as a required crewmember on a number of Delta Air Lines flights when he did not have an appropriate medical certificate.

At the hearing before the administrative law judge, evidence was introduced, and there was a stipulation, showing that Twomey had taken part in a number of Delta Air Lines flights as a regularly assigned crewmember between May 1, 1984 and May 6, 1984. There was evidence that as a very senior Delta captain, possessing some 28 years of experience, he had been allowed to "bid" on these routes as part of Delta's regular assignment process and, thereafter, flew as assigned crew. Twomey argues, however, that the FAA never established that he flew specifically as pilot-in-command rather than in some lesser position. If Twomey had served as pilot-in-command, section 61.3(c) required his medical certificate to be first class and current. If, however, he had served as first or second officer, his existing certificate which had "expired" as a first-class medical certificate on April 30, would still have had

validity as a second-class medical certificate, making him "legal." [4]

█ Twomey's attorney made this argument, along with a good many others, to the agency, but presented no evidence that Twomey, in fact, had flown in a subordinate role. The NTSB made no specific finding as to Twomey's capacity on these flights. However, it found that flights made between May 1 and May 6 were in violation of FAR 61.3 because Twomey's certificate had expired. Since the certificate could only have expired if he flew as pilot-in-command, this was tantamount to a finding that he flew in that capacity. The only question, therefore, is whether there is substantial evidence in the record to support a finding that he had flown as pilot-in-command rather than in a more junior capacity.[5]

█ The record makes clear that Twomey was a *captain* for Delta. Delta's Chief Pilot in Boston also described him as one of the senior pilots with the airline, who had been with Delta and a predecessor airline about 28 years. The FAA argues that captains generally perform as pilots-in-command, an assertion which fits the dictionary definition of "captain" (derived from the Latin, "capitaneus" meaning "foremost, chief") as "a person having authority over and responsibility for a group or unit." Webster's New International Dictionary (3d ed. 1971). Twomey's likely command status was confirmed by the fact that on the date of the enroute inspection, May 6, 1984, which revealed his lack of a current medical certificate, Twomey was scheduled to fly as the captain and pilot-in-command of Delta Flight 164 from Memphis to Atlanta. We think the foregoing facts were sufficient to establish, prima facie, that Twomey flew as pilot-in-command on the flights between May 1 and May 6. In the unlikely event this senior

---

**4.** 14 C.F.R. § 61.23(b)(1) (1987) states as follows:

(b) A second-class medical certificate expires at the end of the last day of—
(1) The 12th month after the month of the date of examination shown on the certificate, for operations requiring a commercial pilot

certificate or an air traffic control tower operator certificate....

**5.** The Federal Aviation Act provides that for purposes of review by the courts of appeals "[t]he findings of fact by the Board, ... if supported by substantial evidence, shall be conclusive." 49 U.S.C. § 1486(e) (1982).

captain had been flying in a junior role, his attorney could easily have brought this out by subpoenaing the relevant records or by seeking the information when examining Delta's Chief Pilot and other supervisory personnel. Twomey was represented by counsel at the administrative hearings, and the record suggests that he was present personally at at least one of them. He was in a position easily to correct any misimpression as to his true status should there have been one.

Given Twomey's command status on the flight where he was first questioned, the fact that he was both a captain and a very senior one, and the availability of an opportunity to present evidence that he flew in other than a command position had that been the fact, we believe the agency could properly have inferred that Twomey had acted as pilot-in-command in the mentioned flights in violation of section 61.3 of the regulations.

### III.

Twomey contends the revocation of his license constitutes action arbitrary, capricious, and abusive of discretion within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1982), as incorporated by the Independent Safety Board Act of 1974, 49 U.S.C. § 1903(d) (1982). He argues that the use of the FAA's power to issue emergency orders was arbitrary in his case because there was no threat to public safety. His position is that since there was medically nothing wrong with him, the possibility that he might pilot airplanes without a proper medical certification was no real emergency as defined in the regulations.

■ In considering this argument, the NTSB said that its "review authority does not extend to consideration of the reasonableness of the Administrator's decision to invoke his emergency power." Without expressing ourselves as to the correctness of this statement, we hold that in order for someone to succeed before us in challenging an FAA's emergency determination, it must be shown "that the determination was 'a clear error of judgment' lacking any rational basis in fact." *Nevada Airlines, Inc. v. Bond,* 622 F.2d 1017, 1021 (9th Cir.1980), *citing Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974).

■ We do not find the determination of an emergency to have been a clear error of judgment; there was basis in the record and in law for it. The ALJ stated,

I have to concur with the National Transportation Safety Board's holdings in many previous cases of this type where they have held—where there is an intentional falsification of a material fact as we have in this case that this shows a lack of qualification on the part of the individual involved to hold any type of airman certificate issued by the Federal Aviation Administration that such a material false statement indicates, the board has said, indicates the lack of the necessary degree of care, judgment, and responsibility that the holder of any type of airman certificate could have or should have to be certified accordingly as a pilot by the Federal Aviation Administration.

Counsel for the FAA pointed out that the agency, and ultimately the flying public, depend heavily on the integrity of the system of self-reports that now exists. Deliberate falsification, even in relatively small matters, can undermine the effectiveness of the system, with adverse effects on airline safety. In arguing that the result here goes more to the morality of the pilot than to his danger to public safety, Twomey fails to recognize that the administrator could have found an important connection between the two.

Finally, Twomey argues that there could not have been any real emergency because seven months elapsed between the May 6, 1984, inspection (which revealed a problem concerning his medical certificate) and the issuance of the emergency order of revocation (on December 3, 1984). He adds that as late as October 10, 1984, he received a letter from an FAA inspector saying that "at this time the facts do not warrant legal enforcement action." However, it appears

that the reason the FAA had taken no action against Twomey as of October 10, 1984, is that the agency was not convinced of the *backdating* of the application until sometime after that date. The record suggests that a far less serious view of the situation would have been taken had it been concluded that Twomey was merely negligent, for a period of several days, in renewing his medical certificate. The need for revocation was perceived when the FAA became satisfied of the deliberate falsification.

*The petition for review is denied and the order of the Board is affirmed. Costs for respondent.*