**Robert Edward OLSEN, Petitioner,**

v.

**NATIONAL TRANSPORTATION
SAFETY BOARD,
Respondent.**

No. 92–70451.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 7, 1994 *.

Decided Jan. 18, 1994.

---

* This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Thomas C. Steelman, Oceanside, CA, for petitioner.

Harry S. Gold, Office of the Chief Counsel, Federal Aviation Admin., Washington, DC, for respondent.

Before: GOODWIN and HALL, Circuit Judges, TANNER, District Judge.**

CYNTHIA HOLCOMB HALL, Circuit Judge:

Robert E. Olsen petitions for review of an order by the National Transportation Safety Board affirming the revocation of his airframe and powerplant mechanic certificate. The NTSB had jurisdiction pursuant to 49 U.S.C.App. § 1429(a) over this challenge to the Federal Aviation Administration's emergency order of revocation. We exercise jurisdiction pursuant to 49 U.S.C.App. § 1486(a) over Olsen's appeal of the final NTSB order

and, because substantial evidence supports the conclusion that Olsen intentionally falsified an aircraft logbook in violation of Federal Aviation Regulation 43.12(a), 14 C.F.R. § 43.12(a), we deny the petition and affirm.

**I.**

On November 12, 1990, petitioner Olsen, a certified airframe and powerplant mechanic, assembled and overhauled the engine of his Bellanca Citabria aircraft in Oceanside, California. On that date, Olsen recorded a tachometer reading of "2402:00" in the Citabria's engine log and a reading of "2402" in the aircraft's general log. Olsen subsequently directed a friend to fly the aircraft from Oceanside to Hemet, California and from Hemet to Palomar, California. Each trip took approximately thirty to thirty-five minutes. The aircraft thereafter sat idle in Palomar.

In mid–1991, Olsen offered the aircraft for sale and advertised a "fresh" annual inspection. Gerald Crowe, a commercial pilot and prospective purchaser, hired mechanic Dale Bearden to perform a preliminary walk-around inspection of the Citabria. Bearden indicated that the aircraft appeared sound but lacked logbook references to a current annual inspection. Olsen assured Crowe that he had performed such an inspection a week earlier but had been unable to make the necessary entries at that time because the logbook was in a locked office.

On August 16, 1991, Crowe brought the aircraft's logbook to Oceanside, where Olsen recorded in it an annual inspection notation for August 9, 1991 and entered a tachometer reading of "2402." Satisfied that Olsen had in fact performed such an inspection, Crowe purchased the aircraft. After operating the Citabria for 2.83 hours, Crowe returned it to Bearden for a thorough post-purchase inspection. Bearden discovered numerous defects which rendered the aircraft not airworthy and Crowe notified the FAA.

FAA inspectors subsequently examined the aircraft and concurred in Bearden's as-

** The Honorable Jack E. Tanner, Senior District Judge for the Western District of Washington, sitting by designation.

sessment. Noting that the tachometer read "2406.25," the inspectors determined that the aircraft could not have fallen into disrepair in only four hours of flight time and concluded that Olsen had not in fact conducted an annual inspection in August 1991. As a result, the FAA believed that Olsen had made intentionally false logbook entries regarding the annual inspection and therefore issued an emergency revocation order requiring Olsen immediately to surrender his mechanic certificate.

Olsen appealed to the NTSB, where an Administrative Law Judge affirmed the revocation order. The ALJ declined to decide whether or not Olsen had actually performed an annual inspection on August 9, holding that Olsen's tachometer notation of "2402." constituted an intentionally false logbook entry sufficient to justify certificate revocation. The ALJ concluded that, because Olsen knew the aircraft had flown to Hemet and to Palomar after the November 1990 logbook tachometer entries, he must have known that his August 1991 tachometer entry of the same figure was false. After the full NTSB affirmed the ALJ's decision, Olsen filed a timely appeal to this court.[1]

## II.

Federal Aviation Regulation 43.12(a) prohibits making "[a]ny fraudulent or intentionally false entry in any record or report that is required to be made, kept, or used to show compliance with any [FAA] requirement." 14 C.F.R. § 43.12(a)(1). Under FAA regulations, "the elements of an intentional false statement violation are falsity, knowledge, and materiality." *Janka v. NTSB*, 925 F.2d 1147, 1150 (9th Cir.1991) (false statement under § 61.59(a)). *See Hart v. McLucas*, 535 F.2d 516, 519 (9th Cir.1976) (same); *Administrator v. Rice*, 5 N.T.S.B. 2285 (1987) (false statement under § 43.12(a)), *aff'd*, 881 F.2d 1084 (9th Cir.1989). Olsen challenges the

NTSB's findings on all three elements of this test, asserting that the logbook entry was not false, that he did not know it to be false, and that any error was immaterial.

■ Our review of the NTSB is "narrowly circumscribed." *Janka*, 925 F.2d at 1149. We will affirm unless the NTSB's order is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Janka*, 925 F.2d at 1149. Although we review *de novo* the NTSB's conclusions of law, we must accept as conclusive any findings of fact supported by substantial evidence in the record. 49 U.S.C.App. § 1486(e); *Janka*, 925 F.2d at 1149. Substantial evidence supports the NTSB's findings when "they logically arise from the facts. They need not be the only result which could so arise." *Meik v. NTSB*, 710 F.2d 584, 586 (9th Cir.1983).

### A.

Olsen contends that his tachometer notation of "2402." was not a false entry. He first notes that, although the aircraft concededly had flown from Oceanside to Hemet and from Hemet to Palomar after the "2402:00" entry in November 1990, the NTSB never established precisely what the tachometer read on August 9. He argues that the two flights might have taken less than a hour's total time and that, as a result, the tachometer might have indicated "2402:99" or less on August 9. He finally concludes that his logbook entry was not false because he intended his notation of "2402." to express a range from "2402:00" "2402:99." To support this argument, Olsen notes that his November 1990 logbook entries ("2402:00" and "2402") do not have a decimal point. According to Olsen, "[a] reasonable mind would necessarily conclude that from the presence of the prior log entries and the blank spaces to the right of the

1. Olsen appeals only the NTSB's affirmance of the ALJ finding that he intentionally falsified a logbook entry. The ALJ also found that Olsen had violated regulations prohibiting the return to service of an aircraft without proper mainte-

nance records, *see* 14 C.F.R. § 43.5(a), and proscribing minimum maintenance standards for aircraft repair, *see id.* § 43.13(a). Because Olsen does not challenge this aspect of the NTSB order, we do not consider it here.

decimal that the entry does not account for the tenths or the hundredths" of the hour. [Blue Brief at 12].

■ We reject this farfetched contention for two reasons. First, as noted by the FAA, Olsen never raised the argument before the ALJ and gave no explanation for failing to do so. The NTSB was under no obligation to consider it. *Cf.* 49 U.S.C.App. § 1486(e) ("No objection to an order of the Board or Administrator shall be considered by the court unless such objection shall have been urged before the Board or Administrator or, if it was not so urged, unless there were reasonable grounds for failure to do so.").

■ Second, substantial evidence supports the NTSB's determination that the logbook entry was false. The record indicates that the aircraft's two flights probably took more than an hour's total time, thus dictating that the tachometer would read "2403:00" or greater. Moreover, Olsen was unable to explain to the ALJ why the tachometer had not changed during the two flights, speculating only that the gauge might not have worked. Olsen's subsequently-formulated "range of possible entries" theory simply does not coincide with his earlier testimony. Finally, if Olsen actually had wanted to indicate a tachometer range, he could easily have recorded "2402:___" or "2402:xx" or some other figure to show that he was not sure of the precise reading. The logbook entry as written merely looks like a period following the tachometer figure.

■ Substantial evidence "is something less than weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1965). The NTSB's conclusion that Olsen's logbook entry of "2402." was false certainly satisfies this standard and we are bound to accept it. 49 U.S.C.App. § 1486(e).[2]

**B.**

■ Olsen contends that, even if the tachometer notation was incorrect, he did not intend to make a false logbook entry. He claims that, because he made the entry when he was not near the aircraft, the best he could do was make a reasoned estimate. To make such an estimate, Olsen asserts, might have been negligent but was not intentionally false. To support this argument, Olsen notes that he had "nothing to gain" by falsifying the logbook.[3]

The NTSB found that, because Olsen knew the aircraft had flown twice since the November 1990 logbook entries, he did in fact know that the August 1991 tachometer entry was false. We agree. "[T]he element of knowledge in [false statement] cases may be inferred from circumstantial evidence.... [T]he [NTSB]'s inference from circumstantial evidence that [a mechanic] knowingly made false entries [i]s not an impermissible step if supported by substantial evidence." *Erickson v. NTSB,* 758 F.2d 285, 288 (8th Cir. 1985). Because Olsen failed sufficiently to explain the erroneous tachometer entry, the NTSB was justified in inferring actual knowledge of the logbook's falsity. *See id.* at 287 (proper for NTSB to infer actual knowledge where petitioner "offered no reasonable explanation for logbook time which exceeded

**2.** Olsen also contends that he could not have made a "false statement" because FAA regulations only require logbook notation of "time in service" and not notation of actual tachometer readings. *See* 14 C.F.R. § 43.11(a). This argument misses the point. Regulation 43.12(a) prohibits any "intentionally false entry in any record or report that is required to be made." 14 C.F.R. § 43.12(a)(1). The logbook is a required record. *Id.* § 43.11. Accordingly, if the tachometer notation was false, it would constitute a "false entry" in a required record.

**3.** Noting that Olsen's logbook entry facilitated his sale of the aircraft, the ALJ disagreed with this "lack of motive" argument. We need not reach the issue because motive is not needed to prove a Regulation 43.12(a) violation. *See Administrator v. Rea,* No. EA–3467, 1991 WL 321385 (NTSB December 26, 1991).

... the time reflected in Air Freight records for the same flights").

When presented with incredible explanations, the NTSB often infers actual knowledge of false statements in violation of Regulation 43.12(a). *See Rea*, 1991 WL 321385 at *2 (rejecting petitioner's contention that he misunderstood application question); *Administrator v. Aero Lithics, Inc.*, No. EA–2934, 1989 WL 267467 (NTSB April 7, 1989) (rejecting petitioner's contention that he intended a false entry to mean something else); *Rice*, 5 N.T.S.B. 2285 (rejecting petitioner's contention that an incorrect logbook date was a mistake). It was reasonable for the NTSB to do so in this case.

## C.

■ Olsen finally contends that the falsity of his logbook entry was not material because the tachometer reading was in error by no more than two hours. Olsen notes that the FAA uses tachometer time to gauge when an aircraft needs a 100–hour inspection and argues that, because the FAA gives up to ten hours leeway in requiring inspections, *see* 14 C.F.R. § 91.409(b), his erroneous entry was *de minimis*. Again, we think Olsen misses the point.

"[A] false logbook entry is material if the statement was capable of influencing the FAA." *Janka*, 925 F.2d at 1150 (internal quotation omitted). *Accord Twomey v. NTSB*, 821 F.2d 63, 66 (1st Cir.1987); *Cassis v. Helms*, 737 F.2d 545, 547 (6th Cir.1984). The ALJ found Olsen's tachometer entry to be material because it implied that he had not flown the aircraft since November 1990 and it could therefore have influenced servicing determinations. We agree.

We also think the fact that Olsen knowingly made a false entry was, in this context, material in itself.

[A mechanic] who knowingly misrepresents a logbook entry bearing on the condition of an aircraft he owns for purposes of enhancing its salability reveals a willingness to place personal gain ahead of professional responsibility that is incompatible with the position of public trust he occupies. Such individual clearly lacks the judgment a qualified certificate holder is expected and required to possess.

*Rice*, 5 N.T.S.B. 2285. "The FAA, of course, is charged with promoting aviation safety. The FAA cannot meet this responsibility unless ... logbooks are free of knowing misrepresentations of fact." *Cassis*, 737 F.2d at 547 (citation omitted). "[T]he issue here is trust.... [A]n individual who does not ensure the scrupulous accuracy of his representations in records on which air safety critically depends cannot be said to possess the necessary care, judgment, and responsibility" required of a mechanic. *Administrator v. Guerin*, No. EA–3827, 1993 WL 87670 (NTSB March 12, 1993) (internal quotation omitted).

## III.

Olsen violated Regulation 43.12(a) by making an intentionally false logbook entry regarding the tachometer of his aircraft. This violation was sufficient to justify the FAA's revocation of his airframe and powerplant mechanic certificate. *E.g., Erickson*, 758 F.2d at 290; *Rea*, 1991 WL 32138 at *3 ("intentional falsification is a serious offense which in virtually all cases the [FAA] imposes and the [NTSB] affirms revocation"). We deny Olsen's petition for review and affirm the NTSB.

**Petition for review DENIED. NTSB Order AFFIRMED.**