45 F.3d 435
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Arnold DEL RIO, Petitioner,
v.
NATIONAL TRANSPORTATION SAFETY BOARD; Administrator,
Federal Aviation Administration, Respondents.
 No. 92-70642.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 8, 1994.*
Decided Dec. 21, 1994.
 
 Before: FLETCHER, THOMPSON and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Arnold Del Rio petitions for review of the National Transportation Safety Board's (Board) decision affirming the suspension of his commercial pilot certificate, as ordered by an administrative law judge (ALJ) for the Federal Aviation Administration (FAA). The ALJ found that Del Rio violated sections 91.79(a) and 91.9 of the Federal Aviation Regulations (FAR). See 14 C.F.R. Part 91 (1988).[1]
 
 
 3
 Del Rio argues that the ALJ's findings of fact, which the Board adopted as its own, are not supported by substantial evidence.
 
 
 4
 The Board had jurisdiction to hear Del Rio's appeal of the FAA's order suspending his certificate. 49 U.S.C. app. Sec. 1429(a). Del Rio's petition for review by this court was not filed within the requisite sixty days after the Board served its final order. Del Rio, however, has asserted grounds for his three-day late filing, grounds which we will assume are sufficient to excuse the late filing.
 
 
 5
 We have jurisdiction to hear this petition for review. 49 U.S.C. app. Sec. 1486(a).
 
 FACTS
 
 6
 On August 16, 1988, Del Rio, as the pilot-in-command, flew a Hughes Model 369 helicopter over Carmel-by-the-Sea (Carmel). Eyewitnesses observed the helicopter circle around a church several times and hover more than once at altitudes of about 150 to 250 feet above ground level (AGL).
 
 
 7
 The ALJ found that the helicopter made at least two hovers at altitudes ranging from 150 to 250 feet AGL. As a result, the helicopter was placed within the height-velocity curve.[2] The ALJ found this was a violation of section 91.79(a) of the FAR. The ALJ also found that Del Rio "did not exercise the degree of a safety-conscious judgement [sic] required of him in his altitude/speed selections," and that this violated section 91.9. The Board affirmed the ALJ's decision. This petition for review followed.
 
 STANDARD OF REVIEW
 
 8
 Although we review de novo the Board's conclusions of law, we accept as conclusive the Board's factual findings if they are supported by substantial evidence. Olsen v. NTSB, 14 F.3d 471, 474 (9th Cir.1994).
 
 
 9
 "A review for 'substantial evidence' is one undertaken with some deference." Howard v. FAA, 17 F.3d 1213, 1216 (9th Cir.1994). Under this standard, we will not disturb a finding of fact if it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citations omitted). A conclusion may be supported by substantial evidence even though an inconsistent conclusion may also be drawn from the evidence. Olsen, 14 F.3d at 475 (citing Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026 (1966)).
 
 DISCUSSION
 
 10
 Section 91.79(a) of the FAR prohibits operation of an aircraft at altitudes where, if the aircraft's power unit failed, an emergency landing could not be made without undue hazard to persons or property on the ground. To prove a violation of section 91.79(a), the Administrator need only show that an emergency landing from the altitude at which Del Rio flew the helicopter would have posed an unreasonable risk of harm, not that it would have been impossible. Administrator v. Michelson, 3 N.T.S.B. 3111, 3113-14 (1980), aff'd, Michelson v. NTSB, 679 F.2d 900 (9th Cir.1982).
 
 
 11
 Section 91.9 prohibits the careless or reckless operation of an aircraft, which endangers the life or property of another.
 
 
 12
 The fact that a helicopter was operated in the height-velocity curve over a congested area is sufficient to show a violation of sections 91.79(a) and 91.9. Administrator v. Oeming, NTSB Order No. EA-3542 at 8-9 (1992); e.g., Administrator v. LoFranco, NTSB Order No. 2748 at 3-4 (1988) (affirming a violation of sections 91.79(a) and 91.9 where the helicopter created an undue hazard by operating within the height-velocity curve).
 
 
 13
 The ALJ's findings that the helicopter hovered twice at altitudes between 150 and 250 feet AGL, and was therefore operated within the height-velocity curve, is supported by substantial evidence. FAA Safety Inspector Dennis Day testified that if the helicopter hovered[3] at an altitude below 425 feet AGL, then it was operated within the height-velocity curve.
 
 
 14
 Two witnesses testified they saw the helicopter hovering--holding steady over a fixed point on the ground--at 150 to 250 feet AGL. Fireman Chuck August observed the helicopter hover twice at altitudes around 200 to 250 feet AGL. August also testified the helicopter was hovering so close to treetop level that its "rotor wash" caused the treetops to sway back and forth.
 
 
 15
 Carmel Police Officer Thomas Ely testified he saw the helicopter hover twice around 200 and 150 feet AGL. Ely also testified he saw the helicopter move backward. The helicopter was low enough so that both Ely and August could easily read its registration number.
 
 
 16
 The fact that Del Rio's helicopter was operating at below its maximum gross weight had no significant effect on the application of the height-velocity curve. Inspector Day testified that if the helicopter hovered between 150 and 250 feet AGL, then the operation of the aircraft below its maximum gross weight would have only an "infinitesimal effect" on the height-velocity curve. Del Rio's safety pilot testified that a helicopter operating below its maximum gross weight and hovering at 250 feet AGL or below would not be able to successfully autorotate.
 
 
 17
 With the eyewitness testimony of the helicopter's hovering and Inspector Day's testimony of the application of the height-velocity curve, there was substantial evidence for the ALJ to find that Del Rio operated the helicopter within the height-velocity curve, and that this violated section 91.79(a).
 
 
 18
 There was also substantial evidence that Del Rio violated section 91.9. Inspector Day testified that an engine or rotortail failure on Del Rio's aircraft would have posed a hazard to persons or property on the ground. The terrain over which Del Rio's aircraft hovered was hilly terrain, there were numerous obstacles, and it was densely populated with people. According to Officer Ely's testimony, there was vehicular traffic immediately under the aircraft and pedestrians in the area over which it was hovering.
 
 
 19
 There was substantial evidence that Del Rio could not have safely landed the helicopter from the height he was operating it if the engine or rotortail failed. There was no emergency landing area readily available.
 
 
 20
 We conclude there is sufficient evidence to support the findings. The ALJ and the Board did not err in finding that Del Rio violated sections 91.79(a) and 91.9.
 
 
 21
 Petition for review DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 On August 1990, Part 91 of the FAR was reorganized. See 54 Fed.Reg. 34,284 (1990). Citations to the Part 91 regulations are to the earlier version of the FAR. These earlier regulations--91.79(a) and 91.9--have been recodified and may now be found at sections 91.119(a) and 91.13(a)
 
 
 [2]
 The height-velocity curve charts certain combinations of altitude and airspeed within which flight is not recommended
 
 
 [3]
 To interpret the height-velocity curve, the curve's use of the word "hover" is given its plain meaning. Cf. Almero v. I.N.S., 18 F.3d 757, 761 (9th Cir.1994) (plain meaning of an unambiguous word in statute is controlling, unless at odds with the drafter's intent). "To hover" is defined as "to maintain altitude without forward motion." Webster's New International Dictionary 1097 (3d ed. 1986). This definition is consistent with the description of the FAA's witnesses who testified Del Rio's aircraft was holding steady over a fixed point--it was not moving forward