**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 13 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

THUNDERBIRD PROPELLERS, INC.,

　　　Plaintiff-Appellant,

v.

FEDERAL AVIATION
ADMINISTRATION, JANE GARVEY,
ADMINISTRATOR,

　　　Defendants-Appellees.

No. 98-9520

**APPEAL FROM THE NATIONAL TRANSPORTATION SAFETY BOARD**
**(ORDER NO. EA-4648; CASE NO. SE-15141)**

Edward A. McConwell, (Catherine E. Moore on the brief), Mission, Kansas, for Plaintiff-
Appellant.

Robert P. Vente, (Peter J. Lynch, Assistant Chief Counsel on the brief), Washington,
D.C., for Defendants-Appellees.

Before **BRORBY, HOLLOWAY** and **LUCERO**, Circuit Judges.

**HOLLOWAY,** Circuit Judge.

　　　The Federal Aviation Administration (FAA), on January 22, 1998, issued an

Emergency Order of Revocation revoking Thunderbird Propellers, Inc.'s (Thunderbird)

Air Agency Certificate for various alleged violations of federal aviation regulations. I App. at 1. Thunderbird immediately appealed the order and sought a hearing before an administrative law judge.

The ALJ conducted a hearing on February 22, 1998, and announced his Oral Initial Decision and Order, I App. 74–97, on February 27, 1998. The judge dismissed six of the eight counts against Thunderbird but found Thunderbird had intentionally falsified records that Thunderbird was required to keep and maintain pursuant to Federal Aviation Regulations (FARs) 43.12(a), 43.13(a), 145.57 and 145.61. I App. at 88 (Count III).[1]

---

[1] FAR 43.12(a) provides in part:

> No person may make or cause to be made: (1) Any fraudulent or intentionally false entry in any record or report that is required to be made, kept, or used to show compliance with any requirement under this part . . .

FAR 43.13(a) provides in relevant part:

> Each person performing maintenance . . . on an aircraft, engine, propeller or appliance shall use the methods, techniques, and practices prescribed in the current manufacturer's maintenance manual or Instructions for Continued Airworthiness prepared by its manufacturer, or other techniques, and practices acceptable to the Administrator, except as noted in § 43.16.

FAR 145.57 provides:

> (a) Except as provided in § 145.2, each certified domestic repair station shall perform its maintenance and alteration operations in accordance with the standards in part 43 of this chapter. It shall maintain, in current condition, all manufacturer's service manuals, instructions, and service bulletins that relate to the articles that it maintains or alters.

FAR 145.61 provides:

The judge further found that Thunderbird had worked on a propeller while its air certificate was suspended.  Id. at 90 (Count V).  This was a violation of FAR 145.3.[2]

Thunderbird appealed the ALJ's order to the National Transportation Safety Board (NTSB).  The NTSB adopted an Opinion and Order on March 26, 1998, denying Thunderbird's appeal and affirming the emergency order of revocation as modified by the ALJ, and affirming his initial decision.  I App. 99-107.  Thunderbird then appealed the NTSB's decision to this court.

We are asked to consider three issues: (1), whether the "stale complaint rule," 49 C.F.R. § 821.33, mandates dismissal of the complaint against Thunderbird;(2), whether the record contains substantial evidence to support the ALJ's findings as to Counts III and V; and(3), whether violations of Count III and V warrant a revocation penalty.  We exercise jurisdiction under 49 U.S.C. § 44709 and must affirm the NTSB's order unless it is arbitrary, capricious or otherwise contrary to law.  Copsey v. NTSB, 993 F.2d 736, 738 (10th Cir. 1993).  We conclude that the order was not in error and affirm.

**I**

Thunderbird was a certified repair station operating under an air agency certificate.

---

> Each certified domestic repair station shall maintain adequate records of all work that it does . . . [t]he station shall keep each record for at least two years after the work it applies to is done.

[2] FAR 145.3 provides in relevant part:

> No person may operate as a certified repair station without, or in violation of, a repair station certificate.

3

From March through July 1996 Randy Foster was an aviation safety inspector for the FAA. In March he visited Thunderbird's station at Wiley Post Airport in Oklahoma City. He observed Thunderbird using MS nuts during the overhaul of propellers manufactured by Hartzell Propeller Inc. (Hartzell). I App. at 108-10. Hartzell did not approve of the use of MS nuts for its propellers; instead, the manufacturer-approved nut was the A-2043-1 nut. " . . on an aluminum prop, it holds the hub halves together, and on steel hub props, it holds the clamp that holds the blade on the propeller." I App. at 110.

Foster informed the president of Thunderbird, Paul Finefrock, that the substitution of MS nuts for A-2043-1 nuts was improper. I App. at 148-49. Finefrock acknowledged Thunderbird was using MS nuts as substitutes, II App. at 196, because they were significantly cheaper than the A-2043-1 nuts. I App. at 148. Finefrock further explained that Foster's predecessor inspector had approved Thunderbird's practice of using MS nuts. II App. at 208. The ALJ found that MS nuts are as airworthy as A-2043 nuts. I App. at 88.

During the March inspection, the FAA obtained a copy of work order #2152 which stated that Thunderbird had used A-2043 nuts on the overhaul of a propeller but that this was not correct. I App. 112; I App. at 109-13; II App. at 285-87. FAA regulations require a repair station to keep copies of work orders for two years. I App. at 181, 183-84. The FAA further found that in work orders #2000 and #2156, Thunderbird represented that it had overhauled propellers pursuant to Hartzell's OH Manual # 117D.

II App. at 302-06; 310-13. Hartzell's manual authorizes only the A-2043 nut. II App. at 320; 301 ("Where a Hartzell part number is specified for a fastener, use of replacement parts which do not provide these controls is unacceptable."). However, Tommy Allison, a former FAA employee, testified at the administrative hearing that under FARs 21.303, 43.13(b) and FAA advisory circular 4313-1, use of MS standard hardware is acceptable to the FAA. II App. at 220-21. He further testified that "common hardware such as nuts and bolts are exempted" from the FAA approval process and that Thunderbird was authorized to make repairs using MS nuts "as long as [Thunderbird] uses materials that will cause the product to be equal to its original condition." Id. at 221-22.

Foster again attempted to inspect Thunderbird's station in June and July of 1996, I App. at 108-10, but was denied access to the facility. As a result, on July 10, 1996, the FAA issued an emergency order suspending Thunderbird's certificate until Thunderbird permitted the inspection. Id. Thunderbird appealed the order to the NTSB and petitioned this court, filing an emergency motion to stay the FAA's order. We denied the emergency motion. Thunderbird Propellers, Inc. v. United States, No. 96-9525 (10th Cir. 1996)(unpublished disposition).

In August 1996, Jeffrey Rowray delivered to Thunderbird aircraft N777SM for repair of an oil leak in the propeller. II App. at 245, 248-50. Rowray told Foster, and Foster testified, that Thunderbird Propellers performed maintenance on the propeller, including removal and installation. II App. at 229-30, 244. On two occasions, Finefrock

contacted Rowray and asked him to fly the plane to test the repairs. II App. at 245-45; 254-55. During these tests, Finefrock informed Rowray of the work that had been done on the plane.

On September 19, 1996, Thunderbird permitted the FAA to inspect its facilities and withdrew its petition before our court. The FAA withdrew its order of suspension. During this round of inspections, Foster obtained another copy of work order #2152. The reference to A-2043 nuts had been crossed out and the copy carried the notation: "Record corrected August 26, 1996. Should have been MS 20365-624." I App. at 125; II App. at 307-09. Finefrock testified the "correction" was made on advice from counsel. II App. at 211.

## II

## A

Thunderbird argues that Counts III and V should be dismissed pursuant to the "stale complaint rule" of 49 C.F.R. § 821.33, as had other counts. The "stale complaint rule" operates as a form of statute of limitations, requiring dismissal of charges "[w]here the [FAA's] complaint states allegations of offenses that occurred more than six months prior to the FAA advising [the certificate holder] as to the reasons for the proposed action . . . ." 49 C.F.R. § 821.33. The FAA concedes that the conduct constituting Counts III and V occurred more than six months prior to the issuance of the Emergency Order of Revocation.

6

However, the "stale complaint rule" contains an exception which the FAA argues applies here. If the FAA's complaint alleges that the certificate holder lacks the qualifications to hold the certificate, then the "stale complaint rule" does not apply. Id. To determine whether the "lack of qualifications" exception applies, courts use a two-step analysis. Zukas v. Hinson, 124 F.3d 1407 (11th Cir. 1997). First, if the complaint alleges a lack of qualifications, the ALJ is required to determine whether the complaint presents an issue of qualifications, assuming the allegations to be true. Id. at 1410-11 n.7. Qualifications cover more than technical proficiency, also, including judgment and integrity. See Borregard v. NTSB, 46 F.3d 944, 947 (9th Cir. 1995); Twomey v. NTSB, 821 F.2d 63, 68 (1st Cir. 1987). Second, if the complaint presents an issue of qualifications, then the matter proceeds to a hearing on the issue of qualification. Zukas v. Hinson, 124 F.3d at 1410-11 n.7.[3] Id.; see also Administrator v. Sorenson, No. EA-4191, 1994 WL 250085 ( NTSB, June 3, 1994).

We are persuaded the "lack of qualifications" exception applies. The FAA's instant complaint presents an issue of qualifications because Count III alleges Thunderbird intentionally falsified required records and Count V alleges Thunderbird operated while under suspension. These allegations alone implicate Thunderbird's qualifications. See Cowell v. NTSB, 612 F.2d 505, 506-07 (10th Cir. 1980)(making false

---

[3] This step constitutes the hearing on the merits of the FAA's complaint See Zukas, 124 F.3d at 1410-11 n.7.

7

statements to the FAA makes the stale complaint rule inapplicable); see also Borregard, 46 F.3d at 947 ("The law is well-settled that '[a]n Inspection Authorization holder who knowingly misrepresents a logbook entry bearing on the condition of an aircraft . . . clearly lacks the judgment a qualified certificate holder is expected and required to possess.'")(quoting Administrator v. Rice, 5 NTSB 2285 (1987)).

**B**

Thunderbird next argues that there was not substantial evidence to support the ALJ's findings with regard to Counts III and V. We review legal conclusions de novo but must accept findings of fact as conclusive if they are supported by substantial evidence. Cowell, 612 F.2d at 506.

Count III states that Thunderbird intentionally falsified maintenance records in violation of 14 C.F.R. § 43.12(a). Section 43.12(a) provides in relevant part:

No person may make or cause to be made:

(1) Any fraudulent or intentionally false entry in any record or report that is required to be made, kept, or used to show compliance with any requirement under this part . . . .

Id. To prove intentional falsification, the FAA must show Thunderbird made a knowing misrepresentation of a material fact in a required record. See Olsen v. NTSB, 14 F.3d 471, 474 (9th Cir. 1994); Rice, 5 NTSB 2285. For this violation, the FAA is not required to show that the false entry was offered to show compliance with an FAA regulation nor is the agency required to show that FAA inspectors were actually misled by the

8

misrepresentation. Fraud and intentional falsification are distinct concepts for purposes of the regulation. Intentional falsification consists of a knowing misrepresentation of a material fact. Fraud requires proof of the additional elements of intent to deceive and reliance on the misrepresentation. Cassis v. Helms, 737 F.2d 545, 546 (6th Cir. 1984). Thunderbird admits that it did not install A-2043 nuts as represented on the parts lists attached to the work orders. II App. at 196; 302-06; 310-133. Thunderbird was obligated under FARs 145.57(a) and 145.61 to maintain adequate records of all work that it did in order to comply with C.F.R. Part 43.[4]

Thus, the question is whether the false statements were material. We are persuaded that they were. False statements are material when they have "the natural tendency to influence, or were capable of influencing" a decision of the FAA inspector charged with determining Thunderbird's compliance with FAA regulations. Cassis v. Helms, 737 F.2d at 547. By falsely representing that it used A-2043 nuts when in fact it used MS nuts, Thunderbird had the capability to influence FAA inspector's determination that Thunderbird was using only authorized parts and adversely affected the FAA's ability

---

[4] Thunderbird argues that the notation of "A-2043" in the work orders was a mere clerical error made by "persons unknown." Brief of Appellant at 6. Thunderbird also asserts that it eliminated any misrepresentation by correcting the notation. The ALJ, by finding that Thunderbird intentionally misrepresented use of A-2043 nuts in the work orders, rejected this theory of Thunderbird's defense and found a sufficient violation of FAR 43. 12(a) to support Count III.

to trace the parts.[5]  I App. at 104-05.  In the analogous Olsen case, the Ninth Circuit held that falsifying a tachometer reading in a logbook was a false representation of a material fact.  The court reasoned that the FAA cannot meet its responsibility of safe air travel unless it can depend on logbooks being free of errors.  Olsen, 14 F.3d at 476.  Moreover, the court concluded: "We also think that the fact Olsen knowingly made a false entry was, in this context, material in itself."  Id.  Thus we conclude that the false misrepresentation was material.

Thunderbird argues that its false notations are excused by the FAA's purported authorization for Thunderbird to use MS nuts.  Tommy Allison, a witness for Thunderbird, testified that under FARs 21.303, 43.13(b) and FAA advisory circular 4313-1, use of MS standard hardware is acceptable to the FAA.  II App. at 220-21.  He further testified that "common hardware such as nuts and bolts are exempted" from the FAA approval process and that Thunderbird was authorized to make repairs using MS nuts "as long as [Thunderbird] uses materials that will cause the product to be equal to its original condition."  Id. at 221-22.

We disagree with Thunderbird's contention.  The issue is not whether Thunderbird used defective nuts; the issue is whether Thunderbird's false entry that it was using A-2043 nuts "had a tendency to influence, or [was] capable of influencing" a decision of the

---

[5]  For this reason the fact that the ALJ found MS nuts to be as good as, if not better than, A-2043 nuts does not rebut our conclusion that the false representation was material.

FAA inspector charged with determining Thunderbird's compliance with FAA regulations. Cassis, 737 F.2d at 547; see also Borregard, 46 F.3d at 946-47.[6] We thus conclude that there was substantial evidence to support the ALJ's conclusion that Thunderbird violated 14 C.F.R. § 43.12(a)(1).

The ALJ also found the FAA had proven Count V, which stated that Thunderbird operated its repair station while its certificate was suspended in violation of FARs 43.9(a), 145.57(a) and 145.3. The gist of the FAA's charge is that Thunderbird, while its certificate was suspended, removed a propeller from a Beechcraft Bonanza aircraft in order to repair an oil leak in the propeller.

We are persuaded that substantial evidence supports the ALJ's finding. First, Thunderbird does not dispute that between July 10, 1996, and September 23, 1996, its certificate was suspended. Second, Mr. Rowray testified that his aircraft was transported to Thunderbird for repair of an oil leak in the propeller. II App. at 249. Rowray also testified that twice Thunderbird's President, Mr. Finefrock, called Rowray to test-fly the

---

[6] Even if the issue was whether the FAA authorized MS nuts despite Thunderbird's false entries, Thunderbird does not prevail. FAR 43.13(a) does not authorize Thunderbird to use MS nuts because the nuts are not approved by Hartzell as substitutes for the A-2043 nuts. Thus Thunderbird did not "use methods, techniques, and practices in the current manufacturer's maintenance manual . . . ." I App. at 146-47. FAR 43.13(b) similarly provides no support for Thunderbird. The regulation requires that maintenance be performed "with materials of such a quality" that the propeller be equal to its "original or properly altered condition." The record indicates that Thunderbird presented no evidence that, prior to the inspection, it had submitted data to the FAA or to Hartzell that MS nuts were acceptable as substitutes for A-2043 nuts. I App. at 147.

aircraft. Id. at 245-46, 254. Third, Rowray wrote a check to Thunderbird for the costs associated with the attempted repairs, and the check was cashed by Thunderbird. Id. at 246-47, 343.

Thunderbird argues that it did not perform the work on Rowray's aircraft; instead, other entities, including Thunderbird Associates, performed the work. Brief of Appellant at 23. The ALJ considered this testimony and rejected it when he found in favor of the FAA. I App. at 90. We cannot reweigh the evidence or reevaluate the ALJ's credibility determination. Hill v. NTSB, 886 F.2d 1275, 1278 (10th Cir. 1989). Because substantial evidence supports the ALJ's findings, we must consider those findings as conclusive.

## C

The ALJ and the NTSB affirmed the revocation of Thunderbird's certificate for its violations. The FAA has broad discretion to establish sanctions for violations of air safety regulations. See Pinney v. NTSB, 993 F.2d 201, 204 (10th Cir. 1993). Thunderbird appears not to dispute that revocation is an appropriate sanction for intentional falsification in violation of 14 C.F.R. § 43.12(a)(1).

The ALJ and the NTSB also correctly upheld revocation of Thunderbird's certificate for operating while its certificate was suspended. While operating without a certificate, in violation of FAR 145.3 generally carries a maximum fine of only $1000, in FAA Order 2150.3A, it was stated that "[s]anctions above or below the normal range may be sought based on other considerations, such as factors of aggravation or mitigation of if

12

necessary to further the Administrator's policy." Thus the FAA was within its discretion to revoke Thunderbird's certificate in this circumstance - operating in contravention of an FAA order suspending its certificate. See Stix v. Bond, 569 F.2d 1029, 1031 (8th Cir. 1978)(revocation of airman's certificate for a violation committed while certificate was already suspended was a proper sanction).

Accordingly, the petition for review is **DENIED** and the Board's order is **AFFIRMED**.