WARBELOW'S AIR VENTURES, INC., Petitioner,

v.

FEDERAL AVIATION ADMINISTRATION, Respondent.

No. 00–70423.

FAA No. CP97AL0012.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 2001.

Decided Sept. 20, 2001.

---

Before SCHROEDER, Chief Judge, T.G. NELSON and SILVERMAN, Circuit Judges.

## MEMORANDUM *

We have jurisdiction under 49 U.S.C. § 46110, and we deny the petition.

### A. *Fuel Pump Violations*

When considered together, Steven Rimer's ("Rimer") testimony and the maintenance records for the two fuel pumps constitute substantial evidence supporting the Federal Aviation Administration ("FAA") Administrator's conclusion that Rimer modified those pumps. Although Rimer's lack of independent recollection raised the possibility that he did not in fact modify the pumps, that does not mean that substantial evidence is lacking. A conclusion may be supported by substantial evidence even though a plausible

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

alternative interpretation of evidence would support a contrary view.[2]

■ As to the safety of the fuel pumps, FAA investigators John Gamble and James Tupper testified that modifying the fuel pumps without installing screws at the proper torque values could lead to fuel leaks. Rimer admitted at the hearing before the Administrative Law Judge ("ALJ") that when modifying the fuel pumps, he did not follow the manufacturer's instructions which specify the procedures for ensuring proper torque values. Thus, there is substantial evidence to support the Administrator's conclusion that the fuel pumps were not airworthy, i.e., not properly maintained according to specifications.[3]

Rimer's pre-hearing statements do not show that Rimer installed the screws at the proper torque values. Rimer made those statements in the context of arguing that he-in addition to the manufacturer-was authorized to modify the fuel pumps. Rimer's statements never mentioned torque values or other specifics relating to the procedures he used when modifying the fuel pumps.[4]

Finally, the ALJ did not erroneously conclude that there was no evidence casting doubt on Rimer's credibility. All we can tell from the ALJ's decision is that he did not consider the fact that Warbelow's Air Ventures ("Warbelows") fired Rimer a sufficient "basis for concluding that Mr. Rimer had reason to [testify] contrary to the truth of the matter." As the ALJ was in the best position to evaluate Rimer's credibility, we will not disturb the ALJ's conclusions so long as the ALJ considered all the evidence. There is no indication that he did not do that.

**B. Emergency Locator Transmitter ("ELT") Violation**

■ The FAA has interpreted "inoperable" in 14 C.F.R. § 135.179 to mean that an instrument is not working as intended.[5] Because Warbelows' alternative interpretation-that an instrument is "operable" if it is working, even though not as intended-is not compelled by § 135.179's plain language, we reject it.[6]

We also hold that there is substantial evidence to support the Administrator's decision that Warbelows' ELT was "inoperable" during the flight in question. Gamble testified that the ELT's internal

---

**2.** *Olsen v. NTSB*, 14 F.3d 471, 474 (9th Cir. 1994) ("Substantial evidence supports ... findings when they logically arise from the facts. They need not be the only result which could so arise.") (internal quotations and citation omitted).

**3.** Again, that we might reach a different conclusion given the fact that the fuel pumps did not leak over hundreds of hours of operation does not justify overturning the Administrator's decision. *See id.*

**4.** Even if Rimer's pre-hearing statements tend to show that he installed the screws at the proper torque values, the ALJ was entitled to believe Rimer's testimony at the hearing over those pre-hearing statements.

**5.** *In re Hampton Air Transport Systems, Inc.*, FAA Order No. 97–11, 1997 WL 93231 at *2 (Feb. 20, 1997) ("[E]ven if the glide slope indicator worked intermittently, it could not be considered operable, because it did not work reliably," and thus "[t]he law judge did not err in finding [a § 135.179 violation.]").

**6.** *In re Transcon Lines*, 89 F.3d 559, 567 (9th Cir.1996) (stating that we defer to an agency's interpretation of its regulation unless an alternative reading is compelled by the regulation's plain language). Under Warbelows' interpretation, an ELT that sends a signal, no matter how ineffective, would be "operable" for purposes of § 135.179. Because the purpose behind regulations like § 135.179 is to ensure the safe operation of aircraft, that simply cannot be the case.

antenna is not the same as the external antenna, that the internal antenna's ability to transmit a signal is limited because it is shielded by the fuselage and surrounding wiring, and that the reason for the internal antenna is so the ELT can be used in the event there is an aircraft evacuation.[7]

Furthermore, there is evidence that suggests Warbelows realized that its ELT was not working as intended. The ALJ found that the entry, "MEL'ed per 25–1–4," in the maintenance records referred to the ELT, not just the external antenna. Even Arthur Warbelow understood that an external antenna was not a superfluous instrument. Although Warbelows' demonstration at the hearing is evidence suggesting that its ELT was working as intended, that demonstration is of limited probative value because it transmitted a signal over a mere thirty feet.

PETITION DENIED.

---

7. Tupper also testified that an external antenna is required and that, with that antenna missing, the ELT could not correctly transmit a signal outside the airframe.

