991 F.2d 791
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Claude SCHLAGENHAUF, Jr., Petitioner,
v.
FEDERAL AVIATION ADMINISTRATION; National Transportation
Safety Board, Respondents.
 No. 92-1989.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 2, 1993
Decided: April 26, 1993
 
 On Petition for Review of an Order of the National Transportation Safety Board. (EA-3611)
 Rodney Allen Dean, DEAN & GIBSON, Charlotte, North Carolina, for Petitioner.
 James William Tegtmeier, Appellate Branch, Enforcement Division, Office of the Chief Counsel, FEDERAL AVIATION ADMINISTRATION, Washington, D.C., for Respondents.
 Peter J. Lynch, Manager, Appellate Branch, Enforcement Division, Office of the Chief Counsel, FEDERAL AVIATION ADMINISTRATION, Washington, D.C., for Respondents.
 N.T.S.B.
 AFFIRMED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Appellant Claude Schlagenhauf, Jr. appeals the decision of the National Transportation Safety Board (NTSB), which affirmed the Federal Aviation Administration's (FAA's) emergency order revoking all Schlagenhauf's airman certificates. The NTSB found that Schlagenhauf had given flight instruction and signed log books during a period of time when his Flight Instructor certificate was expired. Schlagenhauf maintains the action was improperly brought as an emergency enforcement action; that his conduct did not run afoul of any FAA regulations; and that the penalty and sanctions imposed were excessive.
 
 I.
 
 2
 In April 1991, Schlagenhauf held pilot ratings as a Certified Flight Instructor (C.F.I.), Certified Flight Instrument Instructor (C.F.I.I.), and Commercial and Airline Transport Pilot (A.T.P.). As the expiration date of his C.F.I. certificate approached, he took a check ride with a designated pilot examiner. The examiner concluded that Schlagenhauf did not perform the Lazy 8 maneuver in the manner suggested by the practical test standards. As a result, the examiner did not approve renewal of Schlagenhauf's C.F.I. certificate, which expired May 1, 1991. It was apparently known by many people at the Gastonia, North Carolina, airport that Schlagenhauf's license had not been renewed.
 
 
 3
 Schlagenhauf received additional training on the Lazy 8 maneuver, and on July 23, 1991, he demonstrated performance of all necessary maneuvers for renewal of his certificate. On August 22, he received an oral and flight test for renewal of the C.F.I., and on that date received a new certificate.
 
 
 4
 On August 7, before renewal of his certificate, Schlagenhauf had given flight instruction to Pat McSwain, a student pilot, for 8.1 hours, at $25.00 per hour. On that date he signed McSwain's logbook following his signature with the letters C.F.I. and his then expired certificate number. Schlagenhauf testified that he had intended to sign the log as A.T.P. rather than C.F.I.
 
 
 5
 Prior to renewal of his certificate, on August 8, 13, and 15, 1991, Schlagenhauf gave flight instruction to Kelly Girting. Her logbook noted the areas of training she received, and was signed by Schlagenhauf, who added the initials C.F.I. and a certificate number. Schlagenhauf testified that the three entries were made on a single occasion. Girting testified that on August 22, she had asked Schlagenhauf to sign her logbook so that she could take her written examination. At that time, Schlagenhauf told her that he could not because he had to renew his C.F.I. certificate. Two days later, Schlagenhauf informed Girting that someone had reported him to the FAA for not having a current flight instructor certification, and requested her logbook. He then erased the C.F.I. designation he had previously written down, and replaced it with A.T.P.
 
 
 6
 On or about June 27, 1991, Norris VanDyke began to take flight instruction from Schlagenhauf. For the first 10 entries of VanDyke's logbook, Schlagenhauf (whose C.F.I. certificate was then expired) filled in the entries, describing the lesson. After July 20, VanDyke made his own logbook entries. Schlagenhauf did not sign any of the entries in VanDyke's logbook. VanDyke testified that he did not know that logbook entries needed to be signed by a C.F.I. before they counted toward his flight instruction.
 
 
 7
 McSwain, Girting and VanDyke all testified that Schlagenhauf told them he could provide them with flight instruction. Schlagenhauf concurred, but testified that he had never represented to them that he possessed a certified flight instructor's certificate. VanDyke testified that Schlagenhauf had removed an FAA certificate from his wallet and briefly held it for VanDyke to see. On August 20, VanDyke overheard a conversation at the airport that suggested to him that Schlagenhauf had failed to renew his instructor certificate. He contacted the FAA to determine Schlagenhauf's qualifications.
 
 
 8
 On August 23, 1991, a FAA aviation inspector spoke with Schlagenhauf at the Gastonia airport, telling him that he had received a report that Schlagenhauf was giving flight instruction after his certificate had expired. Schlagenhauf denied the allegation.
 
 
 9
 It appears to be undisputed that Schlagenhauf had a complete safety record. It is also undisputed that the FAA knew of all the pertinent circumstances surrounding the allegations against Schlagenhauf in August of 1991, and did not take any action for almost eight months, when it designated the case as an emergency proceeding.
 
 
 10
 On April 10, 1992, the Administrator of the FAA issued an emergency order immediately revoking Schlagenhauf's pilot and mechanic certificates, pursuant to authority vested in the Secretary of Transportation by the Federal Aviation Act, 49 U.S.C. App.s 1421 et seq. The Administrator alleged that between May 1, 1991 and August 21, 1991, Schlagenhauf exercised the privileges reserved for holders of a flight instructor certificate when he did not hold a flight instructor certificate issued by the FAA. Schlagenhauf did not appeal the designation of the order as an emergency action. He did file a motion to dismiss on the basis of staleness, since the order was issued more than six months after the allegations were known to the Administrator. That motion was denied.
 
 
 11
 The Administrator concluded that Schlagenhauf gave flight instruction required for the issuance of pilot certificates or ratings when he did not hold a flight instructor certificate, in violation of section 61.3(d)(1) of the Federal Aviation Regulations (FAR), 14 C.F.R. § 61.3(d)(1). The Administrator also determined that Schlagenhauf endorsed pilot logbooks to show that he gave flight instruction when he did not hold a flight instructor certificate, in violation of FAR section 61.3(d)(2), 14 C.F.R. § 61.3(d)(2). In addition, the Administrator found that Schlagenhauf exercised the privileges of a flight instructor certificate holder after his flight instructor certificate had expired, in violation of section 61.19(a) of the FAR, 14 C.F.R.s 61.19(a). Finally, the Administrator concluded that Schlagenhauf made fraudulent or intentionally false logbook entries that were required to be kept, made, or used to show compliance with any requirement for issuance of any certificate or rating issued under Part 61 of the FAR, in violation of FAR section 61.59(a)(2), 14 C.F.R.s 61.59(a)(2).
 
 
 12
 Schlagenhauf appealed the FAA's emergency order of revocation to the NTSB by a notice dated April 20, 1992. At a full evidentiary administrative hearing on May 8, 1992, Schlagenhauf and the FAA presented testimony and witnesses in defense of their positions. At the conclusion of the hearing, the ALJ rendered an oral initial decision and order, affirming in full the Administrator's emergency order of revocation. Schlagenhauf filed a notice of appeal with the full NTSB on May 10, and on June 26 the NTSB issued a written opinion and final order in which it denied the appeal and affirmed the emergency order of revocation.
 
 
 13
 Schlagenhauf subsequently petitioned to this court for review of the NTSB's final order.[1]
 
 II.
 
 14
 The first issue we must investigate is whether the NTSB erred in denying Schlagenhauf's motion to dismiss on the basis of staleness, or in permitting the action to proceed as an emergency order. Schlagenhauf filed the motion to dismiss the FAA complaint as stale because it was filed by the Administrator more than six months after the Administrator had actual knowledge of the alleged events. Schlagenhauf argued that the order was issued as an emergency order to avoid dismissal due to staleness.
 
 
 15
 The Administrator refused Schlagenhauf's motion to dismiss the complaint. The NTSB affirmed, stating that "the Board has stated in their cases prior to this date, that they simply don't feel that they have the power to comment on the emergency power that has been granted to the FAA under the FAA Act of 1958."
 
 
 16
 Schlagenhauf argues on appeal that an emergency order is justified only if "an emergency exists and safety in air commerce or air transportation requires the immediate effectiveness of[this] order." 49 U.S.C. App. § 1429(a). He charges that the Administrator has never offered evidence on the issue of safety to contradict the testimony offered by Schlagenhauf that he was, at all times, a safe and conscientious flyer. Moreover, by the time the emergency order was filed, Schlagenhauf had renewed his certificate based on his satisfactory completion of the flight check. Emergency actions are extraordinary remedies, argues Schlagenhauf, and should not be used to defeat the procedural safeguards otherwise built into the system.[2]
 
 
 17
 Schlagenhauf, however, confuses two separate issues in his argument. Whether a complaint may be dismissed under the stale complaint rule is an entirely separate inquiry from whether a proceeding should have been brought as an emergency. Schlagenhauf's argument that the complaint should have been dismissed as stale is unsupported by the FAA statutory scheme and by the case law. His argument that the proceeding should not have been brought as an emergency proceeding fails because the Administrator did not abuse the broad discretion he is granted in designating orders as emergencies.
 
 
 18
 Under Section 821.33 of the Rules of Practice in Air Safety Proceedings, 49 C.F.R. § 821.33, promulgated pursuant to the Federal Aviation Act, 49 U.S.C. App. § 1421 et seq ., a respondent may move to dismiss allegations based on events that occurred more than six months prior to the bringing of the action. Where a complaint does not allege lack of qualifications of the certificate holder, the administrator must show good cause for the delay, or the judge must dismiss the allegations as stale. Where the complaint alleges lack of qualifications, the law judge must first determine whether an issue of lack of qualifications would be presented if all allegations are assumed to be true. If the issue presents itself, he must put the parties on notice of that fact and proceed to the hearing; if not, the law judge must dismiss the complaint unless good cause for the delay is shown.
 
 
 19
 It thus appears that the issue of whether a stale complaint may be dismissed is governed not by the issue of safety, but by a broader standard, the issue of a lack of qualifications. The FAA points out that its complaint specifically presented an issue of Schlagenhauf's qualifications in that it alleged that he fraudulently or intentionally falsified logbooks entries that were required to be kept to show compliance with requirements for the issuance of pilot certificates. The allegation of falsification in itself, the NTSB argues, raises an issue of qualification. See Administrator v. McCarthney, No. EA-3245, 1990 NTSB LEXIS 190, (Dec. 28, 1990) (precedent firmly establishes that even one intentional falsification compels the conclusion that the falsifier lacks the necessary care, judgment and responsibility required to hold any airman certificate), aff'd in part and remanded on other grounds, 954 F.2d 1147 (6th Cir. 1992); Administrator v. Berry, No. EA-2689, 1988, NTSB LEXIS 12 (March 3, 1988) (board precedent shows intentional falsification is sufficiently damaging to airman certification process to demonstrate lack of qualifications). The NTSB has stated: "The issue of qualification embraces more than an airman's technical skills; it involves also his willingness or capacity to conform his conduct to all applicable legal requirements." Administrator v. Tur, No. EA-3458, 1991 NTSB LEXIS 262 (Dec. 13, 1991) (revocation of a certificate upheld for lack of qualification even though it had been renewed since the time of the alleged incident thereby demonstrating the airman's present qualification). See also Administrator v. Mason, No. EA-3483, 1992 NTSB LEXIS 37 (Jan. 22, 1992) ("[b]ecause [the airman] could not truthfully and accurately prepare the [Airman Competency/Proficiency Check] forms, the aviation system can no longer trust him to properly exercise the privileges of his airman certificate.").
 
 
 20
 Thus, the stale complaint rule was defeated by the allegations and later proof of a lack of qualification through falsification of records. The bringing of the action as an emergency order had no impact on staleness or lack of staleness. While it may seem strange that the FAA, after waiting such an extended period of time to bring the complaint, chose to issue the order as an emergency one, especially after permitting, in the interim, the reissuance of Schlagenhauf's certificate, several factors frustrate Schlagenhauf's argument that his case should not have been brought as an emergency action. First, the Administrator has broad discretion to decide when public safety concerns warrant emergency action. See 49 U.S.C. App. § 1429(a); Nevada Airlines, Inc. v. Bond, 622 F.2d 1017, 1020 (9th Cir. 1980) (standard of review of Administrator's determination of emergency is whether it was an abuse of discretion, arbitrary and capricious, or not in accordance with law); Blackman v. Busey, 938 F.2d 659, 663 (6th Cir. 1991) ("Anyone challenging the Administrator's emergency determination must demonstrate a substantial likelihood that the determination was a 'clear error of judgment' lacking any rational basis in fact.") (quoting Nevada Airlines, 622 F.2d at 1021). Second, the NTSB has repeatedly affirmed emergency revocation of certificates where falsification was alleged. See Administrator v. Hasan, No. EA-3536, 1992 NTSB LEXIS 70 (April 9, 1992) (repeated falsifications justified emergency order); Administrator v. Boggio, NTSB Order EA-3194, 1990 NTSB LEXIS 141 (Sept. 14, 1990) (falsification and other maintenance-related violations in emergency order affirmed); Administrator v. Finlayson, No. EA-2711, 1988 NTSB LEXIS 28 (April 19, 1988) (emergency order alleging multiple maintenance falsification violations constituting long-term pattern upheld); Administrator v. Niolet, 3 N.T.S.B. 2846 (1980) (emergency revocation upheld for false logbook entries).
 
 
 21
 Finally, Schlagenhauf has failed to show that the designation of the order as an emergency prejudiced him. He did not petition this court for a review of the designation of the order as an emergency within 60 days of its issuance, as he was entitled to do. See Nevada Airlines, Inc., 622 F.2d at 1019-20 (review of Administrator's designation of order as emergency, in a proceeding independent and prior to Administrator's determination of the underlying substantive issues, granted). Clearly, an emergency order sets in motion an expedited process that effectively curtails the time to prepare for the case. However, the only prejudice of substance that Schlagenhauf points to is the failure of one of his witnesses to appear. Schlagenhauf knew that the proceedings were expedited, and had the right, under NTSB's Rules of Practice, to request that the ALJ subpoena his witness. He did not avail himself of that procedure. Thus, his claim that due process was denied due to the expedition of the hearing is unpersuasive. More time to prepare a defense will almost always provide the potential for presenting a better case. But the expedited procedures are set up to balance the public interests in safety and the private interest in the right to the certificate.
 
 
 22
 Accordingly, the NTSB did not err in affirming the denial of the motion to dismiss the case on the basis that it was stale, or in permitting the order to proceed as an emergency action.
 
 III.
 
 23
 Next we consider whether the FAA proved violations of any FAA regulations. Schlagenhauf argues that the NTSB erred in its finding that he violated sections 61.3(d)(1), 61.3(d)(2), 61.19(a), and 61.59(a)(2) of the FAR. He claims, first, that providing flight instruction by a commercial pilot does not violate those regulations and second, that the evidence did not establish that he endorsed any student's flight logbook or intentionally falsified any logbook entries. He is simply wrong on both the law and the facts.
 
 
 24
 Sections 61.3(d)(1) and (2) forbid anyone other than certified flight instructors to "give any of the flight instruction required to qualify for a solo flight, solo cross-country flight, or for the issue of a pilot or flight instructor certificate or rating" or to endorse a pilot logbook to show that he has given such flight instruction. Section 61.19(a) provides that the holder of a certificate with an expiration date may not, after that date, exercise the privileges of the certificate. Section 61.59(a)(2) prohibits "any fraudulent or intentionally false entry in any logbook, record or report that is required to be kept, made, or used, to show compliance with any requirement for the issuance ... of any certification or rating...."
 
 
 25
 Schlagenhauf provides no authority-beyond an excerpted statement by the ALJ, which he contends was not specifically appealed and cannot now be disturbed-for the position that as a commercial pilot he was authorized to give the flight instruction he gave.[3] He maintains that the flight instruction that he admittedly gave was not required for his students' qualifications for solo or cross country flight, or for the issuance of a pilot or flight instructor rating, and thus was not prohibited. He creates a distinction between flight instruction and certified flight instruction, arguing that he never promised his students certified flight instruction. He construes section 61.109, which requires 40 hours of flight instruction including 20 from an authorized flight instructor, to support his reading of the regulations, implying that the remaining 20 hours might be satisfied by uncertified flight instruction.
 
 
 26
 All of the instruction given by Schlagenhauf was of the type necessary for solo flight or for an instrument rating. The lessons involved preflight procedures, taxiing, take-offs, normal and short field landings and stalls, and simulated instrument flight. Each of the students was working toward solo flying or for an instrument rating. None of the students was given any indication that the instruction they were receiving could not be counted towards their goals.
 
 
 27
 Section 61.109, which provides for 40 hours of instruction, 20 of which must be from an authorized flight instructor, provides that the remaining 20 hours be solo flight time. Thus Schlagenhauf's implication that his instruction constituted part of the non-certified instruction required to obtain a license is without merit. In addition, Section 61.139 limits commercial pilot privileges to narrow circumstances that do not include the instruction given by Schlagenhauf. Thus the contention that, as a commercial pilot, he was authorized to give the instruction he gave is also without merit. NTSB's and FAA's interpretations of the statutes and regulations in their areas of expertise is entitled to deference if such interpretation "is not clearly contrary to the 'plain and sensible meaning' " of the regulation. Hill v. National Transp. Safety Bd., 886 F.2d 1275, 1278 (10th Cir. 1989). The interpretation that the regulations prohibit flight instruction of the type given by Schlagenhauf in this case is reasonable and entitled to deference. See also Administrator v. Damsky, 3 N.T.S.B. 2391 (1980) (finding that FAR § 61.3(d)(1) prohibits the giving of specified flight instruction by any person except a certified instructor, that whether students did or could use the flight instruction toward a certificate or rating was not controlling, and that the Administrator has a legitimate interest in confining instruction of students to those he has determined possess the requisite qualifications).
 
 
 28
 Schlagenhauf's next argument is based on his efforts to distinguish the signing of a logbook from the endorsement of a logbook. He claims that by merely signing the logbooks and describing flight instruction, he was not endorsing them.
 
 
 29
 The Advisory Circular of the FAA provides that "[e]ach endorsement should include the instructor's signature, date of signature, CFI certificate number, and certificate expiration date." Schlagenhauf's entries in at least two of the logbooks contained all of that information, with the exception of the expiration date.
 
 
 30
 Schlagenhauf's contention that he violated no regulation with his entries in the student's logbooks is a technical splitting of hairs not based upon the reality of the situation. None of the students was informed about the intricacies of endorsement for certification. By signing the logbooks and making entries about the instruction he was giving, as well as by misleading the students as to whether he was in fact certified to give the instruction they were clearly seeking, Schlagenhauf violated the clear purpose behind the requirement for endorsement by certified pilots only. His assertion that his signatures were not "endorsements" because he did not sign his certificate expiration date is also unpersuasive. As the NTSB noted,"the important factor ... is whether the entry, without regard to its content, has been subscribed. If it has been, the signer, or endorser, vouches his belief in the truth of the information there recorded." That is, a signing, in the circumstances here present, is an endorsement.
 
 
 31
 Schlagenhauf penultimately argues that there was no demonstration that he intentionally falsified the logbook entries by putting the initials C.F.I. after his signature. He maintains that he intended to sign A.T.P., that only his long standing habit of endorsing with C.F.I. caused him mistakenly to write those letters. He reminds us that he told Girting of his status of not having a C.F.I. certificate prior to the time the investigation commenced (though after he had already given her instruction). He points out that he refused to endorse Girting's logbook when she asked him to, and changed the initials from C.F.I. to A.T.P. when he discovered his mistake. All of this, he contends, is evidence that he had no fraudulent intent.
 
 
 32
 Intention, of course, is difficult to establish. However, the ALJ and the NTSB refused to credit Schlagenhauf's claim that his inscription of C.F.I. was inadvertent. This court must take NTSB's factual findings as conclusive when they are supported by substantial evidence. 49 U.S.C. App. § 1486(e); North Carolina v. Federal Aviation Admin., 957 F.2d 1125, 1128 (4th Cir. 1992). It is not the reviewing court's function to evaluate the credibility of the witnesses. Hill, 886 F.2d at 1278. Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support the conclusion; it is less than a preponderance of the evidence, and even if substantial evidence exists in the record to support a contrary conclusion, reversal is not necessarily justified. See Consolo v. Federal Maritime Com., 383 U.S. 607, 619-21 (1966). There is substantial evidence to support the finding that Schlagenhauf, by signing the logbooks, making entries describing flight instruction given, and noting C.F.I. after his name, did so falsely and intentionally. See also Janka v. DOT, National Transp. Safety Bd., 925 F.2d 1147, 1150 (9th Cir. 1991) (elements of intentional false statement violation are falsity, knowledge, and materiality; intent to deceive is irrelevant).
 
 
 33
 Schlagenhauf finally argues that his entries, if false and intentional, were not material falsifications because they were entries that were not required to be kept and would not have been relied upon by the FAA since they were not technically endorsed and did not contain an expiration date for the C.F.I. certificate. The argument essentially is that doing something wrong should not be punished because one to whom the falsehood is directed would not believe it anyway. The test for whether the FAA would rely on the entries is"whether the false statements had the natural tendency to influence, or were capable of influencing the decision of the FAA inspector to whom the logbook was submitted." Cassis v. Helms, 737 F.2d 545, 547 (6th Cir. 1984). Testimony established that Schlagenhauf's entries indicate that the students received certified flight instruction in the areas and procedures described. The NTSB properly concluded that the logbook entries were material falsifications.
 
 IV.
 
 34
 The final issue we consider is whether the penalty imposed was excessive. Schlagenhauf contends that the revocation of all of his certificates is an unduly harsh sanction and that the ALJ erred in refusing to reduce it. Schlagenhauf also takes issue with the statement of the ALJ that he did not have the authority to reduce the sanction, citing to several cases where ALJs have indeed reduced sanctions. See, e.g., Administrator v. Schuttler, No. EA-3487, 1992 NTSB LEXIS 34 (January 1992); Administrator v. Gilman, No. EA-3447, 1991 NTSB LEXIS 258 (November 29, 1991). Although those cases indicate that in some cases the ALJ does have the authority to review sanctions (none of them involved falsifications or certificate revocation), the ALJ's indication that it would be useless to do so in this case because of the likelihood that the Board would reinstate the penalty is justified by the weight of the precedent. In McCarthney v. Busey, 954 F.2d 1147, 1154 (6th Cir. 1992), the court noted that"revocation has been found to be an appropriate remedy by the NTSB and by this court for logbook falsifications." See also Twomey v. National Transp. Safety Bd., 821 F.2d 63 (1st Cir. 1987) (court upheld the revocation of a certificate holder's airline transport pilot, flight engineer, ground instructor, and medical certificates after the pilot backdated an application for a medical certificate); Cassis v. Helms, 737 F.2d 545 (6th Cir. 1984) (court upheld one year revocation for falsification of logbook). ALJs are, after all, obligated to approve sanctions that are consistent with NTSB precedent.
 
 Therefore, the order of the NTSB is
 
 35
 AFFIRMED.
 
 
 
 [1]
 The revocation of Schlagenhauf's airman certificates precluded him from reapplying for certification for a period of one year, which has now expired. See 49 U.S.C. App. § 1422(b)(1). The action, however, is not moot. Schlagenhauf's revocation will remain on his permanent aviation record and he is required, if he desires recertification, to establish anew all of the requirements for certification
 
 
 [2]
 Designation of an order as an emergency immediately revokes an airman's certificates and expedites the procedure to determine ultimate resolution
 
 
 [3]
 The ALJ's statement-"I don't think there is any question, Mr. Dean, that a commercial air pilot can give flight instructions and take money for it"-was taken out of context and was contradicted by the rest of the ALJ's statements, and most especially by the Order