# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————

Argued November 13, 2014              Decided June 30, 2015

No. 14-1023

MICHAEL P. HUERTA, ADMINISTRATOR, FEDERAL AVIATION
ADMINISTRATION,
PETITIONER

v.

JODY DUCOTE AND NATIONAL TRANSPORTATION SAFETY
BOARD,
RESPONDENTS

————

On Petition for Review of a Decision
of the National Transportation Safety Board

————

   *Dana J. Martin*, Attorney, U.S. Department of Justice, argued the cause for petitioner.   With her on the briefs were *Stuart F. Delery*, Assistant Attorney General, and *Michael S. Raab*, Attorney.

   *Gregory S. Winton* argued the cause and filed the brief for respondents.

   *Kathleen A. Yodice*, *Elizabeth M. Candelario*, and *Kenneth M. Mead* were on the brief for *amicus curiae* Aircraft Owners and Pilots Association in support of respondents.

Before: HENDERSON, GRIFFITH and MILLETT, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* MILLETT.

Opinion concurring in part and concurring in the judgment filed by *Circuit Judge* HENDERSON.

MILLETT, *Circuit Judge*:  In June 2010, Jody Ducote co-piloted a passenger-carrying flight round-trip between the United States and the Bahamas.  The problem is that he was not qualified to pilot or co-pilot that flight.  In addition, although his personal records accurately recorded his unlawful flight activities, the record he submitted to Federal Aviation Administration ("FAA") investigators mysteriously omitted any record of the forbidden flight, substituting in its place a fictional flight that Ducote would have been qualified to pilot—if he had actually flown it.

Needless to say, the FAA does not cotton to such conduct.  It issued an emergency order revoking Ducote's pilot license.  In administrative proceedings, Ducote admitted both that he improperly piloted the Bahamas flights and that there was a material discrepancy between his personal flight log and the one he gave to the FAA.  The National Transportation Safety Board, nevertheless, dismissed the Administration's complaint for failure to plead with sufficient factual specificity the seriousness of those violations.  The Board also relied on a credibility determination that the Board mistakenly thought the Administrative Law Judge had made.

We vacate and remand both determinations as arbitrary and capricious, and unsupported by substantial evidence.

# I

## Statutory and Regulatory Framework

The Federal Aviation Act, Pub. L. 85-726 § 609, 72 Stat. 731, 779–780 (1958), *amended by* Pub. L. 103-272 § 1(e), 108 Stat. 745, 1190 (1994), authorizes the Administrator of the Federal Aviation Administration to revoke a pilot's license when, after investigation, the Administrator determines "that safety in air commerce or air transportation and the public interest require that action," 49 U.S.C. § 44709(b)(1)(A).  An emergency order of revocation may be issued when the Administrator informs the National Transportation Safety Board "that an emergency exists and safety in air commerce or air transportation requires the order to be effective immediately." *Id.* § 44709(e)(2).

The pilot whose license is terminated—the "respondent" in the administrative proceeding—can seek administrative review of the revocation order by filing an appeal with the National Transportation Safety Board.  49 U.S.C. § 44709(d). The Administrator's order from which the appeal is taken then serves as the complaint in the administrative proceeding. 49 C.F.R. § 821.31.  Appeals are heard by an administrative law judge ("ALJ"), *id.* § 821.35, whose decision can be reviewed by the Board, *id.* § 821.43.

At the beginning of the administrative process, the pilot can seek dismissal of the Administrator's complaint as "stale" if it was filed more than six months after the conduct that triggered revocation.   49 C.F.R. § 821.33.   The stale complaint rule does not apply, however, when the "complaint

alleges lack of qualification of the respondent." *Id.* § 821.33(b).[1]

"Lack of qualification" is an FAA term of art that refers to those regulatory violations that, by their very nature, warrant revocation of a pilot's certificate, rather than a lesser sanction like suspension. *See Administrator v. Bellis*, NTSB Order No. EA-4528, 1997 WL 101432, at *2 (1997); 49 C.F.R. § 821.33. Such offenses "raise[] a significant question as to whether the airman continues to possess the care, judgment, responsibility, knowledge or technical ability required by his certificate." *Bellis*, 1997 WL 101432, at *2. Thus "lack of qualification" goes beyond just questions of technical proficiency to include offenses showing a lack of "judgment and integrity." *Thunderbird Propellers, Inc. v. FAA*, 191 F.3d 1290, 1295 (10th Cir. 1999).

---

[1] The text of the stale complaint rule provides, as relevant here, that:

> Where the complaint states allegations of offenses which occurred more than 6 months prior to the Administrator's advising the respondent as to reasons for proposed action under 49 U.S.C. 44709(c), the respondent may move to dismiss such allegations as stale pursuant to the following provisions:
>
> \* \* \* \* \*
>
> (b) In those cases where the complaint alleges lack of qualification of the respondent, the law judge shall first determine whether an issue of lack of qualification would be presented if all of the allegations, stale and timely, are assumed to be true. If so, the law judge shall deny the respondent's motion. \* \* \*

49 C.F.R. § 821.33.

One offense that "the Board has repeatedly held implicates a lack of qualification warranting revocation * * * [is] falsifying a logbook." *Bellis*, 1997 WL 101432, at *2; *see Thunderbird Propellers*, 191 F.3d at 1295 (FAA complaint "presents an issue of qualifications" because it alleges "Thunderbird intentionally falsified required records[.]").[2]

While the question of lack of qualification generally "is based on consideration of the pleaded incidents in the aggregate, not one by one," *Administrator v. Brassington*, NTSB Order No. EA-5180, 2005 WL 2477524, at *5 & n.14 (2005), the Board has recognized that "one intentionally false log entry would be sufficient, in and of itself, to warrant revocation," *Administrator v. Olsen*, NTSB Order No. EA-3582, 1992 WL 127810, at *4 (1992); *see also Administrator v. Gusek*, NTSB Order No. EA-4745, 1999 WL 64489, at *2 (1999) ("It is also established that one intentional falsification finding will justify a lack of qualification finding and certificate revocation.").

Under the Board's rules, if an otherwise stale complaint alleges such disqualifying offense conduct, the ALJ must "determine whether an issue of lack of qualification would be presented if all of the allegations, stale and timely, are assumed to be true." 49 C.F.R. § 821.33(b). If so, then the ALJ "shall deny" the motion to dismiss, and the

---

[2] *See also*, *e.g.*, *Administrator v. Lonergan*, NTSB Order No. EA-4477, 1996 WL 494079, at *2 (1996) ("A showing of intentional falsification is a serious offense which in virtually all cases the Administrator imposes and the Board affirms revocation."); *Administrator v. Farrington*, NTSB Order No. EA-4171, 1994 WL 239001, at *2 (1994) ("[I]ntentional falsification charges inherently present an issue of lack of qualification.").

Administrator's complaint will go forward. *Id.* But if the Administrator cannot make such a showing, the law judge "shall dismiss the stale allegations[.]" 49 C.F.R. § 821.33(a)(2).

Even if the complaint does not present an issue of lack of qualification, an otherwise stale complaint can go forward if the Administrator "show[s]" either that "good cause existed for the delay" or that the sanction is in the "public interest." 49 C.F.R. § 821.33(a)(1).

**Factual Background**

Jody Ducote held an Airline Transport Pilot certificate which allowed him to fly as a commercial pilot. 14 C.F.R. § 61.167. That certificate, however, did not allow Ducote to operate all types of aircraft. In order to operate an airplane over 12,500 pounds or one powered by turbojets, the pilot's license must have a specific "type rating" for that airplane. *Id.* § 61.31. A license holder may co-pilot domestic flights without the required type-rating, but not international ones. *Id*. § 61.55.

Even though he lacked the appropriate type-rating for the flight, Ducote co-piloted a Cessna S550 carrying passengers from Mississippi to the Bahamas on June 6, 2010. He co-piloted the same plane, again carrying passengers, from the Bahamas to Florida and then back to Mississippi on June 10, 2010.

Ducote accurately recorded the Bahamas flights in his personal, online flight log. When an FAA investigator requested that Ducote submit his flight record, however, all reference to the June 6th and 10th Bahamas flights vanished. In place of the June 10th Bahamas flight appeared a fictional

record indicating that Ducote piloted a domestic flight between Picayune, Mississippi and Jackson, Mississippi, for which Ducote would have been qualified.

**Procedural History**

On April 16, 2012, the Administrator issued an Emergency Order revoking Ducote's airline pilot certificate on the grounds that he falsified flight records and pilot logbook entries in March, April, May and June of 2010, and that he piloted a passenger-carrying flight between the Bahamas and Florida in June 2010 in an aircraft that he was not qualified to fly.

Ducote sought administrative review of the Order, and then filed a motion to dismiss the Administrator's complaint as stale because it was filed almost two years after the alleged wrongdoing. The ALJ denied Ducote's motion to dismiss. He explained that, if "all of the allegations" in the complaint were "assumed to be true," they would demonstrate a "lack of qualification," and thus the complaint was excepted from the stale complaint rule. J.A. 28–29; 49 C.F.R. § 821.33(b).

At the administrative hearing, Ducote admitted that he co-piloted the Bahamas flights without the appropriate type rating. He also did not dispute the discrepancy between his personal flight record and the one he submitted to the FAA investigator.

The ALJ denied the Administrator's claim that Ducote had intentionally falsified flight log entries for the June 10th Bahamas flight. The ALJ reasoned that the written flight record that Ducote prepared for the FAA was not a "material" filing, and thus could not form the basis of an intentional

falsification charge under 14 C.F.R. § 61.59(a).[3] In the ALJ's view, whether Ducote just "missed some or maybe even he intentionally falsified that document," the log book "is not a document that is required to be maintained by the Administrator." J.A. 398.

In addition, even though Ducote admitted the violation, the ALJ dismissed the unauthorized-flight charge, reasoning that the count had become "stale" once the intentional falsification counts were dismissed.[4] J.A. 398.

The Administrator appealed to the National Transportation Safety Board and, with respect to the June flight record and Bahamas flights that are relevant here, the

---

[3] That regulation provides: "No Person may make or cause to be made:

> (1) Any fraudulent or intentionally false statement on any application for a certificate, rating, authorization, or duplicate thereof, issued under this part;
> (2) Any fraudulent or intentionally false entry in any logbook, record, or report that is required to be kept, made, or used to show compliance with any requirement for the issuance or exercise of the privileges of any certificate, rating, or authorization under this part;
> (3) Any reproduction for fraudulent purpose of any certificate, rating, or authorization, under this part; or
> (4) Any alteration of any certificate, rating, or authorization under this part."

14 C.F.R. § 61.59(a).

[4] The ALJ also dismissed the charges that Ducote had intentionally falsified records made in March, April, and May of 2010. Those counts are not at issue in this petition for review.

Board affirmed on alternative grounds. *Administrator v. Ducote*, NTSB Order No. EA-5664, 2013 WL 3227362 (2013).

First, concerning Ducote's falsification of the June 10th flight record, the Board disagreed with the ALJ and ruled that the log was a "material" submission the intentional falsification of which would render a pilot disqualified. *Ducote*, 2013 WL 3227362, at *8. The Board nevertheless upheld dismissal of the count on the ground that the Administrator had failed to demonstrate that Ducote "had the intent to falsify the document he provided to the [FAA investigating office] upon its request." *Id.* In so holding, the Board said it was adopting a credibility finding that it perceived the ALJ to have made. *Id.* ("[W]e find the law judge's finding concerning [Ducote's] credibility was not arbitrary and capricious. As we decline to disturb the law judge's credibility assessment, we find the Administrator has not established [Ducote] had the intent to falsify the document.").

Secondly, the Board affirmed dismissal of the operational violation arising from the Bahamas flights. Taking a different tack from the ALJ, the Board ruled that the Administrator must "plead the complaint in such a manner as to provide sufficient specificity as to the seriousness of the alleged violation[s]." *Ducote*, 2013 WL 3227362, at *11. The exception to the stale complaint rule, the Board elaborated, only applies when the complaint "*specifically* plead[s] facts concerning a violation that *unequivocally* indicates a lack of qualification[.]" *Id.* (latter emphasis added). To that end, the complaint must "legitimately demonstrate[], not merely allege[], that a lack of qualification exists." *Id.*

Applying that standard, the Board held that the Administrator's complaint failed to allege adequately a "lack of qualification." In so ruling, the Board did not question its longstanding precedent holding that the intentional falsification of a material record like Ducote's flight record established a lack of qualification. Instead, the Board concluded that the complaint failed to demonstrate that the Administrator had the "evidence" to "pursue most of the charges therein," *Ducote*, 2013 WL 3227362, at *10, and that "failure to provide specific bases for the allegations in the complaint" required dismissal of the operational violation as stale, *id.* at *12. The Board thus denied the appeal in full.

## II

### Jurisdiction

Both 49 U.S.C. § 1153(c) and 49 U.S.C. § 44709(f) provide that the Administrator "may" petition for review of a Board order if the "Administrator decides" that the Board's order "will have a significant adverse impact" on air safety and commerce. *Id.* While the Administrator filed a timely petition for review under those provisions, *amicus curiae*, the Aircraft Owners and Pilots Association, argues that this court lacks jurisdiction because the Administrator lacked statutory "standing" to bring this case. Specifically, the Association contends that the Administrator erred in concluding that the Board's application of the stale complaint rule will have the statutorily required "significant adverse impact" and that judicial concurrence in that judgment is a jurisdictional prerequisite.

Ducote does not join that argument, and ordinarily this court will not entertain an *amicus*'s argument if not presented by a party. *See, e.g.*, *Narragansett Indian Tribe v. National*

*Indian Gaming Comm'n*, 158 F.3d 1335, 1338 (D.C. Cir. 1998). But the Administrator joins the Association in characterizing the "significant adverse impact" standard as "jurisdictional," Pet. Br. 23–24, and we labor under a perpetual and "'independent obligation to assure ourselves of [our] jurisdiction,'" *VanderKam v. VanderKam*, 776 F.3d 883, 888 (D.C. Cir. 2015) (quoting *Floyd v. District of Columbia*, 129 F.3d 152, 155 (D.C. Cir. 1997)). Accordingly, in this narrow circumstance, we will follow the *amicus*'s argument only as far as necessary to assure ourselves of our jurisdiction. In this case, it is a short trip.

The Association must "clear a high bar" to establish that the Administrator's "significant adverse impact" determination is jurisdictional. *See United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015). That is because the Supreme Court, of late, has "pressed a stricter distinction between truly jurisdictional rules, which govern a court's adjudicatory authority, and nonjurisdictional claim-processing rules, which do not." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (internal quotation marks omitted).[5] The "significant adverse impact" requirement comes nowhere near hurdling that bar.

*First*, courts will enforce a rule as jurisdictional "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006); *see also Kwai Fun Wong*, 135 S. Ct. at 1632. But nothing in Section 1153(c) (or the identical language of Section 44709(f)) "clearly"—or even unclearly—"states" that the Administrator's

---

[5] *See also Sebelius v. Auburn Regional Medical Ctr.*, 133 S. Ct. 817, 824 (2013) (warning against "profligate use of the term 'jurisdiction'").

determination is "jurisdictional." The term "jurisdiction" appears nowhere at all in 49 U.S.C. § 44709; that Section focuses entirely on the type of administrative processing matters that the Supreme Court and this court have repeatedly held lack jurisdictional consequence. *See, e.g.*, *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1204 (2011) (statutory deadline for an appeal from the Board of Veterans' Appeals "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the [Veterans Court]" (internal quotation marks omitted; alteration in original)); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) (requirement that copyright holders register work before suing "imposes a precondition to filing a claim that is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision, and admits of congressionally authorized exceptions").[6]

Section 1153(c) likewise is devoid of jurisdictional trappings, in sharp contrast to the express jurisdictional reference in the preceding statutory subsection, 49 U.S.C. § 1153(b)(3) ("When the petition is sent to the Board, the court has exclusive jurisdiction to affirm, amend, modify, or

[6] *See also Auburn Regional*, 133 S. Ct. at 824 (Because "[t]he language Congress used hardly reveals a design to preclude any regulatory extension," the statutory deadline to appeal a decision of the Provider Reimbursement Review Board is nonjurisdictional.); *Vermont Dep't of Public Service v. United States*, 684 F.3d 149, 156 (D.C. Cir. 2012) (Since "the language of the Hobbs Act offers no such unequivocal bar," its administrative exhaustion requirement is nonjurisdictional.); *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (The Freedom of Information Act's administrative "exhaustion requirement is not jurisdictional because the [statute] does not unequivocally make it so.").

set aside any part of the order and may order the Board to conduct further proceedings."). That omission says much because the "proximity * * * highlights the absence of clear jurisdictional terms in" Section 1153(c). *Gonzalez*, 132 S. Ct. at 651. "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally[.]'" *Id.* at 649 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

*Second*, the statutory structure confirms that the Administrator's "significant adverse impact" determination is decidedly nonjurisdictional. The critical statutory language speaks entirely in terms of what an agency official—the Administrator—must "decide[]" before filing a petition for review, not what a court must find to exercise decisional authority over that petition. 49 U.S.C. §§ 1153(c), 44709(f). Nothing in the statute requires the Administrator to make that determination in any particular form or to submit it to the court.[7]

In the absence of a long legislative or judicial history of jurisdictional treatment, *see Bowles v. Russell*, 551 U.S. 205, 209–211 (2007), a statutory requirement like the Administrator's duty to find a "significant adverse impact," just "requires a party to take some action before filing" an appeal, *Reed Elsevier*, 559 U.S. at 166, and "says nothing about whether a federal court has subject-matter jurisdiction to adjudicate claims," *id.* at 164. Here, as in *Gonzalez*, there

---

[7] This case thus stands in sharp contrast to *In re Sealed Case*, 131 F.3d 208, 215 (D.C. Cir. 1997), in which the statute explicitly required a prosecutor to "certif[y] to the appropriate district court" that the Attorney General had found a "substantial Federal interest" in the crime's prosecution to "warrant the exercise of Federal jurisdiction," 18 U.S.C. § 5032.

is no tradition whatsoever of according the Administrator's determination jurisdictional consequence. *See Gonzalez*, 132 S. Ct. at 649. Indeed, the nature of the "significant adverse impact" determination closely parallels the "substantial showing" of a constitutional claim requirement in *Gonzalez*, which was held to be nonjurisdictional. *Id.* at 649–650. Both are statutory mechanisms for sifting out insubstantial appeals, not limitations on judicial power.

*Third*, the very nature of the inquiry defies jurisdictional treatment. The statutory text expressly leaves it to the "Administrator"—not a court—to "decide[]" what impact a Board order will have on "carrying out this chapter related to an aviation matter." 49 U.S.C. § 1153(c). That type of operational assessment falls squarely within the Administrator's area of expertise. Nothing in the relevant statutory provisions offers any meaningful guideposts for judicial second-guessing of that quintessentially administrative judgment.

In short, neither the statutory text nor structure provides the type of "'sweeping and direct'" congressional command needed to attach jurisdictional consequence to the Administrator's "significant adverse impact" determination. *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1248 (D.C. Cir. 2004) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975)). As Congress did not treat the requirement as jurisdictional, neither will we. And since the issue does not concern our jurisdiction, we will not accept *amicus*'s invitation to review (or decide if we can review) the merits of the Secretary's "significant adverse impact" determination as neither party pressed that argument. *See Narragansett Indian Tribe*, 158 F.3d at 1338.

## III

## Analysis

This court will uphold a decision of the National Transportation Safety Board unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "unsupported by substantial evidence," 5 U.S.C. § 706(2)(E). *Taylor v. Huerta*, 723 F.3d 210, 213 (D.C. Cir. 2013).

To the extent the agency has interpreted its own "stale complaint" regulation, that interpretation is "'to be accorded deference * * * unless it is clearly contrary to the plain and sensible meaning of the regulation.'" *Taylor*, 723 F.3d at 213 (quoting *Cooper v. NTSB*, 660 F.3d 476, 481 (D.C. Cir. 2011)); *see Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1208 n.4 (2015) (discussing deference under *Auer v. Robbins*, 519 U.S. 452 (1997)). The Board's position will be deemed "arbitrary and capricious if it departs from agency precedent without explanation." *Dillmon v. National Transportation Safety Board*, 588 F.3d 1085, 1090 (D.C. Cir. 2009) (internal quotation omitted). Accordingly, if the Board wishes this court to defer to a change in application of its own rules, it must "acknowledge and provide an adequate explanation for its departure from established precedent." *Id.* at 1089–1090.

## The "Stale Complaint" Rule

The Board held that the Administrator's complaint could not escape the clutches of the stale complaint rule because it did not "*specifically* plead facts" that "*unequivocally* indicate[d] a lack of qualification." *Ducote*, 2013 WL 3227362, at *11 (latter emphasis added). The Administrator's

complaint, the Board continued, failed to "legitimately demonstrate[], not merely allege[]," that a lack of qualification existed. *Id.* That ruling placed upon the Administrator a heightened pleading standard that departed so severely from regulatory text and precedent, and was accompanied by only the most superficial Board analysis, that it must be vacated as arbitrary and capricious.

To begin with, the Board's holding is unhinged from the regulation's plain text. The stale complaint rule is written as a threshold inquiry that is enforced at the outset of an administrative proceeding through a motion to dismiss the complaint. 49 C.F.R. § 821.33. As such, the regulation dictates what the Administrator must "allege[]" and what the "allegations" must "state[]." *Id.* Nothing in the rule requires the Administrator to "demonstrate," anything at that preliminary pleading stage. To the contrary, the rule is explicit that the stale complaint analysis will "assume[]" the truth of "allegations," not require their "unequivocal[]" establishment. *Id.*

In addition, subsection (a) of the rule underscores that the lack-of-qualification test turns on the facial allegations of the complaint. To invoke the separate "good cause" or "public interest" exceptions to the stale complaint rule, subsection (a) requires the Administrator to "show" their applicability through a supplemental filing that goes beyond the allegations of the complaint itself. 49 C.F.R. § 821.33(a). The lack-of-qualification exception, by contrast, does not require the Administrator to "show" anything; the complaint must simply "allege" the lack of qualification. Accordingly, the Board's holding here that Section 821.33(b)'s far *less* rigorous text requires a far *more* rigorous demonstration than subsection (a) turns the regulatory language and structure inside out.

Such atextual interpretations, unaccompanied by any reasoned agency analysis, deserve no judicial deference. *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) ("Deference is undoubtedly inappropriate, for example, when the agency's interpretation is 'plainly erroneous or inconsistent with the regulation,'" or when "there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question.'"); *Drake v. FAA*, 291 F.3d 59, 68 (D.C. Cir. 2002) (To give deference, "the language of the regulation in question must be ambiguous," the agency must have given the issue "fair and considered judgment on the matter," and "the agency's reading of its regulation must be fairly supported by the text of the regulation itself[.]").

Instead, it is incumbent on this court to "ultimately decide[] whether a given regulation means what the [Board] says," *Perez*, 135 S. Ct. at 1208 n.4. And we can discern no structural or textual basis for the heightened-pleading standard imposed here on a complaint that facially and plausibly alleges all of the key elements of an offense that bears directly on a pilot's qualification to hold a license.

The unprecedented reach of the Board's demand for factual specificity is underscored by the already-detailed content of the Administrator's complaint. The complaint, in fact, is anything but "generally pleaded." Specifically, paragraph 9 of the complaint alleges that on June 10th, 2010, Ducote operated the following flights: "Bahamas → Palm Beach → Jackson Evers → Picayune." Paragraph 10 then alleges that Ducote made an entry in the logbook he provided to the FAA stating that, on June 10th, he instead flew "Picayune → Jackson Evers → Picayune." Paragraph 11 brings home the intentionality of the conduct by alleging that the latter entry was "fraudulent or intentionally false in that

the actual dates and route of the flights in question were different from those presented in your logbook." Paragraphs 12–15 then alleged a motivation for Ducote's intentional alteration of the records—that he lacked the appropriate type-rating to operate the Bahamas flight, a passenger-endangering violation of FAA Regulations.

Indeed, the Board's precedent has long recognized that, as a virtually categorical matter, similar allegations of intentionally falsified records "inherently present an issue of lack of qualification." *Administrator v. Farrington*, NTSB Order No. EA-4171, 1994 WL 239001, at *2 (1994); *see also Brassington*, 2005 WL 2477524, at *6 ("It is undisputed that an airman who falsifies required documents lacks qualifications to hold an airman certificate."); *Gusek*, 1999 WL 64489, at *2; *Bellis*, 1997 WL 101432, at *2 ("[F]alsifying a logbook" is "an offense which the Board has repeatedly held implicates a lack of qualification warranting revocation[.]"); *Administrator v. Lonergan*, NTSB Order No. EA-4477, 1996 WL 494079, at *2 (1996).

The Board's rule makes sense. The *intentional* falsification of required records that are used to protect public safety, by its very nature, suggests such a serious lack of honesty and judgment and such a profound contamination of the regulatory processes for protecting public safety as to inherently call into question the individual's qualifications. *See Bellis,* 1997 WL 101432, at *2 (conduct calls qualification into question if a violation "was so deficient that it raises a significant question as to whether the airman continues to possess the care, judgment, responsibility, knowledge or technical ability required by his certificate").

The Board and Ducote rely on *Administrator v. Armstrong*, NTSB Order No. EA-5660, 2013 WL 3227358

(2013), to no avail. *Armstrong* is the last in a line of cases explaining that the Administrator may not use clever pleading strategies to avoid the stale complaint rule. *See, e.g.*, *Bellis*, 1997 WL 101432; *Administrator v. Hawes*, NTSB Order No. EA-3830, 1993 WL 97496 (1993). When a complaint presents allegations of a rule violation that does not customarily warrant revocation—such as the faulty inspections in *Hawes* and *Bellis*—the Administrator cannot escape the stale complaint rule merely by tacking on a conclusory assertion that the allegations "present an issue of lack of qualification," as occurred in *Bellis*, 1997 WL 101432, at *1, or by an unexplained order of revocation for a violation that traditionally warrants a lesser sanction, as occurred in *Hawes*, 1993 WL 97496, at *2.

In *Armstrong*, the Administrator sought to revoke a pilot's certificate under 14 C.F.R. § 61.15(d), which allows the Administrator to seek suspension or revocation of a certificate when the pilot has had two "motor vehicle action[s]" within the same 3 year period. *See Armstrong*, 2013 WL 3227358, at *1. The complaint in *Armstrong* made vague reference to three incidents in which the pilot's driver's license had been suspended, all occurring within three years of each other. *Id.* at *4 n.12. The complaint did not explain why those violations warranted revocation rather than the alternative sanction of suspension. *See id.* Instead, it vaguely and conclusively alleged that "the Administrator finds you lack the qualifications necessary to hold a[] [pilot's] certificate or any other airman certificate." *Id.*

In those circumstances where neither law nor tradition treated the violation as warranting revocation, the Administrator could not avoid the stale complaint rule without "provid[ing] sufficient specificity as to the seriousness of the alleged violation" to elevate it to a qualification concern in

that case. *Armstrong*, 2013 WL 3227358, at *3. The concern in *Armstrong*, as in *Bellis* and *Hawes*, was that wholesale deference to the Administrator's choice of sanction would lead to standardized pleading strategies that would totally undermine the stale complaint rule. *See id.* (giving "wholesale leniency to the Administrator" might lead to the Administrator "tack[ing] on a more serious [violation] even though [he] knows that [he] could not fulfill [his] burden of proof * * *, all in order to avoid the six-month deadline in the stale complaint rule.").

But here the Administrator's complaint did not vaguely or conclusorily refer to Ducote's offense. The complaint identified an offense that the Board had long held bore directly on qualification, and it alleged with precision the false content of the record at issue, what a true record would have documented, and the factual basis for Ducote's motivation to intentionally falsify the records. The Board's exacting demand for specific and unequivocal demonstrations went beyond the bounds of *Armstrong* and turned the stale complaint exception into an evidentiary demand that is ungrounded in precedent. Furthermore, what more factual specificity the Board wanted and why is entirely unexplained.

To be clear, the question in this case is not whether the Board *could* demand a heightened pleading or evidentiary showing from the Administrator to avoid the stale-complaint bar. All we decide is that the Board may not impose such a heightened showing in this case given the regulation's plain text, past Board precedent, and the detailed content of the underlying complaint. We accordingly vacate as arbitrary and capricious the Board's dismissal of Count 4 of the

Administrator's complaint, and remand for further proceedings.[8]

### The Board's Credibility Determination

In dismissing the allegation that Ducote intentionally falsified his flight log entries for June 10, 2010, the Board relied on an adverse credibility determination that it thought the ALJ had made. Because the record is clear that no such credibility judgment was made, we also vacate the dismissal of that count in the complaint.

The false factual content of the record that Ducote submitted to the FAA was never in dispute. Ducote admitted that he flew from the Bahamas on June 10, 2010, that he properly recorded that Bahamas flight in his online logbook, and yet in preparing the flight record for the FAA, he omitted the unlawful Bahamas/Palm Beach flight entirely and substituted in what would have been a lawful domestic flight. The only issue before the ALJ and the Board was whether Ducote intentionally omitted the Bahamas flight from the flight record he gave to the FAA. In dismissing that count of the complaint, the Board did not make its own assessment of the evidence, but instead it deferred to the ALJ's "credibility determination" that Ducote did not intend to falsify the written log.

---

[8] The Administrator did not raise, and thus we do not address, the separate question of whether the stale complaint rule, which turns on "allegations" in a complaint and addresses whether the ALJ should "proceed to adjudicate" the claims, 49 C.F.R. § 821.33, can be applied to dismiss claims on the merits after a full evidentiary hearing, as the ALJ did here, *see Schlagenhauf v. FAA*, 1993 WL 128571, at *3 (4th Cir. 1993).

The problem for the Board is that the ALJ made no such credibility finding. Quite the opposite, the ALJ expressly left that question open, stating that "maybe [Ducote] intentionally falsified the document." J.A. 398. Or maybe it was a mistake. *Id*. There thus was no credibility finding for the Board to adopt on the key factual question underlying that count in the complaint.[9] For that reason, the Board's dismissal of Count 3 of the complaint is unsupported by substantial evidence. *See Pasternack v. NTSB*, 596 F.3d 836, 838–839 (D.C. Cir. 2010); *Van Dyke v. NTSB*, 286 F.3d 594, 597–598 (D.C. Cir. 2002).

# IV

## Conclusion

The Board's interpretation and application of its stale complaint rule to dismiss Count 4 of the Administrator's complaint marks an unexplained departure from prior precedent that is unsustainable under the plain text of the Board's regulation. In addition, the Board relied on a finding never made by the ALJ to dismiss Count 3, rendering its reasoning entirely bankrupt. We vacate those portions of the Board's decision, and remand to the Board for further proceedings. Accordingly, the Administrator's petition for review is granted.

*So ordered.*

---

[9] The Board's reliance on a never-made credibility finding in this case is particularly troubling because the only ALJ actually to *decide* Ducote's credibility with respect to discrepancies in how he recorded critical flight information found Ducote to be "utterly and completely not credible." *Administrator v. Penton*, 2011 WL 7664397, at *6 (2011) (discrediting Ducote's testimony in case brought against his Bahamas flight co-pilot).

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring in part and concurring in the judgment: Although I agree with my colleagues' resolution of the merits, I do not join their jurisdictional analysis, *see* Op. 10–14. No one—petitioner, respondent or *amicus*—briefed the question whether the "significant adverse impact" requirement is jurisdictional. And nothing *requires* us to decide that question because, whether or not it is jurisdictional, the requirement was met here. *See, e.g.*, *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 275 n.1 (5th Cir. 2008) ("Because exhaustion was satisfied, we need not here decide whether exhaustion is . . . jurisdictional"); *SKF USA, Inc. v. U.S. Customs & Border Prot.*, 556 F.3d 1337, 1348 (Fed. Cir. 2009) ("We assume, but do not decide, that the statute of limitations . . . is jurisdictional" because "[the] complaint was timely in any event"). The Administrator certified that the Board's order would have a "significant adverse impact," Pet'r's Br. A1, and, as the Administrator argues in his brief, his determination is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Because I do not think we should decide an unbriefed question of law (jurisdictional *vel non*) to avoid deciding a briefed one (committed to agency discretion), *see Nat'l Juvenile Law Ctr., Inc. v. Regnery*, 738 F.2d 455, 467 (D.C. Cir. 1984) ("We are reluctant to render a decision on . . . important jurisdictional questions without the benefit of briefing and oral argument."), I do not join my colleagues' resolution of the "significant adverse impact" issue. Instead, I would resolve the question as follows.

Before he can obtain "judicial review" of a Board order, the Administrator must "decide[]" that the order will have a "significant adverse impact" on his ability to carry out his duties. 49 U.S.C. §§ 1153(c); 44709(f). *Amicus* contends that, although the Administrator made such a determination here, his certifying memorandum was "vague and general and a mere legal conclusion." *Amicus* Br. 22–23.

But the Court should not review the *substance* of the Administrator's certification because the "significant adverse impact" requirement has all of the hallmarks of a decision "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). First, the statutes put the onus on the Administrator, not the courts, to "decide[]" that a Board order will have a significant adverse impact. The statutes therefore "exude[] deference to the [agency], and appear[] to foreclose the application of any meaningful judicial standard of review." *Webster v. Doe*, 486 U.S. 592, 600 (1988); *see also Claybrook v. Slater*, 111 F.3d 904, 909 (D.C. Cir. 1997); *Drake v. FAA*, 291 F.3d 59, 72 (D.C. Cir. 2002). Second, it is impossible for a court to meaningfully second-guess whether a Board order is "significant." Significance is simply too amorphous to provide a meaningful judicial metric. *See Webster*, 486 U.S. at 600 ("advisable in the interests of the United States" unreviewable); *Dep't of Navy v. Egan*, 484 U.S. 518, 528–29 (1988) ("clearly consistent with the interests of the national security" unreviewable). Finally, the certification decision is, by nature, closely akin to prosecutorial discretion. *See In re Sealed Case*, 131 F.3d 208, 214 (D.C. Cir. 1997) ("The decision to certify that a particular case involves a 'substantial federal interest' implicates the core [of] prosecutorial discretion . . . ."). Such decisions are "presumptively unreviewable," *id.*, because they turn on factors like "the Government's enforcement priorities" that "are not readily susceptible to the kind of analysis the courts are competent to undertake," *Wayte v. United States*, 470 U.S. 598, 607 (1985).

In short, we should not review the correctness of the Administrator's "significant adverse impact" determination. Instead, we should ask only whether the Administrator *made* such a determination. *See In re Sealed Case*, 131 F.3d at 215.

He did so here.  *See* Pet'r's Br. A1.  I would resolve the issue this way.