# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————

Argued December 13, 2021         Decided May 10, 2022

No. 21-1062

YDIL W. PHAM,
PETITIONER

v.

NATIONAL TRANSPORTATION SAFETY BOARD AND FEDERAL
AVIATION ADMINISTRATION,
RESPONDENTS

————

Consolidated with No. 21-1083

————

On Petitions for Review of a Decision
of the National Transportation Safety Board

————

*Alan Armstrong* argued the cause and filed the briefs for
petitioner/cross-respondent.

*Joshua M. Koppel*, Attorney, U.S. Department of Justice,
argued the cause for respondents/cross-petitioners. With him
on the briefs were *Brian M. Boynton*, Acting Assistant
Attorney General, *Abby C. Wright*, Attorney, *Cynthia A.
Dominik*, Assistant Chief Counsel for Enforcement, Federal

Aviation Administration, and *Agnes M. Rodriguez* and *Casey Gardner*, Attorneys.

Before: SRINIVASAN, *Chief Judge*, ROGERS and JACKSON[*], *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Ydil Pham and the Federal Aviation Administration both petition for review of the National Transportation Safety Board's suspension of Pham's pilot and medical certificates for 180 days. Pham contends that the Board erred in concluding that he refused a drug test when he left the test center before providing the requisite amount of urine because (1) he was not told he could drink water (a "shy-bladder" warning), as required by regulation, (2) he was given permission to leave, and (3) his urine sample was unlawfully discarded. He also contends that the Board impermissibly applied a strict-liability standard. The FAA objects by cross-petition to the Board's decision to suspend rather than revoke Pham's certificates as the FAA ordered, contending that (1) the Board is obligated to defer to the FAA's guidance and interpretations of its regulations, (2) those regulations require revocation of medical certificates for at least 2 years after a refusal to test, and (3) the Board deviated from its precedent without explanation. For the following reasons, the court denies Pham's petition and grants the FAA's cross-petition.

**I.**

The FAA is authorized to issue "airman certificates," which permit individuals to engage in a range of activities related to aviation. 49 U.S.C. §§ 44702(a), 40102(a)(8),

---

[*] Circuit Judge Jackson was a member of the panel at the time the case was argued but did not participate in this opinion.

44711(a). Pursuant to this authority, it issues six types of pilot certificates. 14 C.F.R. § 61.5(a). Among other requirements, pilots must be "physically able" to perform their duties, 49 U.S.C. § 44703(a), and must obtain a "medical certificate" certifying their physical fitness to pilot planes as measured against specific criteria, *see* 14 C.F.R. § 61.23 and pt. 67.

The FAA is also required to establish a program for "preemployment, reasonable suspicion, random, and post-accident testing of airmen . . . for use of a controlled substance." 49 U.S.C. § 45102. FAA regulations require that each test subject provide at least 45 milliliters of urine for a drug test. 49 C.F.R. § 40.65(a). If the test subject fails to do so, the collector must follow "shy-bladder" procedures, under which the collector must discard the specimen and "[u]rge the [subject] to drink up to 40 ounces of fluid." *Id.* § 40.193(b). If the subject leaves the test center before the collection is completed, the departure is deemed a refusal to test. *Id.* § 40.191(a)(2).

Further, the FAA may revoke certificates if it "decides . . . that safety in air commerce or air transportation and the public interest require that action." 49 U.S.C. § 44709(b)(1)(A). "Refusal . . . to take a [required] drug or alcohol test . . . is grounds for . . . [s]uspension or revocation" of a pilot certificate, 14 C.F.R. § 120.11, and disqualifies the pilot from holding any of the three classes of medical certificate for two years from the refusal to test, *id.* §§ 67.107(b)(2), 67.207(b)(2), 67.307(b)(2). Adversely affected individuals may appeal an FAA order to the National Transportation Safety Board (hereinafter, the "Board"). 49 U.S.C. § 44709(d).

4

## II.

In August 2020, Pham, an experienced airline pilot, interviewed for a job with Private Jets. As a condition of employment, he was required to take a pre-employment drug test. Upon arrival at the test center, the test collector, Lois West, explained the testing procedures, including that he would need to produce a urine sample. Pham began the testing procedures but did not provide the required 45-milliliter urine sample, *see* 49 C.F.R. § 40.65(a), and left the test center. West reported Pham's refusal to test to Private Jets' drug testing manager, Cindy Boone, who, pursuant to FAA guidance, *see* FAA Drug and Alcohol Compliance Enforcement Inspector Handbook, FAA Order 9120.1D, at 43 (Aug. 9, 2018), notified the FAA that Pham had refused a drug test.

On November 5, 2020, the FAA issued an emergency order revoking Pham's airline transport pilot certificate and his airman medical certificates. Emergency Order of Revocation, FAA Case No. 2020 WA 910339 (Nov. 5, 2020) (hereinafter, the "Revocation Order"). The Revocation Order stated that Pham's failure to remain at the test center until the collection process was completed constituted, pursuant to 49 C.F.R. § 40.191(a)(2), a refusal to submit to a required drug test, Revocation Order at 2, and that Pham, therefore, "lack[ed] the qualifications necessary to hold [an airline transport pilot certificate] and any class of airman medical certificate," *id.* at 3. The revocations were made effective immediately, *id.* at 3, because Pham's "refusal to submit to FAA-required drug testing demonstrates that [he] . . . lack[s] the degree of care, judgment, and responsibility required of the holder of a pilot certificate and any class of airman medical certificate," *id.* at 4. Pham appealed to the Board.

Before an administrative law judge ("ALJ") for the Board, West testified that Pham had provided an insufficient urine sample and had told her that he was unable to stay at the test center any longer. *See* NTSB Hearing Tr. (Nov. 23–24, 2020) at 19–20. West also testified that she informed Pham that leaving before the test collection process was completed would be considered a refusal to take a test. *Id.* at 20. West denied giving Pham permission to leave the test center and testified that she had told Pham that "he would have to get a whole new form from [his] job" after leaving because, once she indicated a refusal on his testing form, she could not use that form again. *Id.* at 21. Although West could not recall whether she informed Pham about the shy-bladder procedure, she noted that she was trained to do so. *Id*. at 20, 39. West further testified that after Pham left, she contacted Boone to notify her of Pham's failure to complete the test. *Id.* at 33–34. Boone's testimony confirmed that West told her that Pham left the test center before completing his drug test, although West had warned him that leaving would be considered a refusal. *Id.* at 61. Boone reported Pham to the FAA, she explained, because she is required to report any refusal of a drug test. *Id.* at 62–63.

Pham admitted in his testimony that the urine sample he produced was deemed insufficient, *id.* at 111, and claimed that when he asked West if he could go to lunch and come back to finish the test, she granted him permission to do so, stating that Private Jets could send a new application if Pham returned, *id.* at 112. Pham testified that West neither gave him shy-bladder instructions nor told him that leaving the test center would be deemed a refusal, claiming that he would not have left the center had he been so informed. *Id.* at 113–14.

The ALJ found that West's testimony was "very credible as to advising [Pham] that" leaving the test center before completing the testing process "was a refusal," *id.* at 158,

noting that her testimony was corroborated by paperwork she had filled out the day the test began, *id.* at 157, Exh. A-2. By contrast, the ALJ found Pham's testimony was unpersuasive, because as an air transport pilot, Pham was held to a "higher standard" and should have known the relevant regulations. *Id.* at 158. The ALJ specifically found that Pham (1) had provided a urine sample that was "insufficient" in volume; (2) "was advised that [leaving the test center] constituted a refusal"; and (3) "was advised that, if he left, he would have to have another confirmation form when he returned." *Id.* at 159. Therefore, the ALJ concluded that the FAA had proven a violation of its drug-testing regulations and affirmed the FAA's revocation of Pham's certificates. *Id.* at 159–61.

Pham appealed the ALJ's initial decision to the Board. The Board deferred to the ALJ's credibility determinations, Opinion and Order, NTSB Order No. EA-5889, at 17–21 (Jan. 4, 2021) (hereinafter, the "NTSB Order"), and affirmed the ALJ's determination that Pham had refused a drug test, *id.* at 21–25. In response to Pham's argument that he did not receive a shy-bladder warning as 49 C.F.R. § 40.193(b) required, the Board observed that "West explained the most important part: leaving before providing an adequate sample constitutes a refusal." *Id.* at 25. The Board also rejected Pham's argument that the ALJ had improperly applied a strict-liability standard, finding that the ALJ "considered the witnesses' testimonies, assessed the witnesses' credibility, reviewed the exhibits, and weighed the parties' arguments." *Id.* at 28. Further, it rejected Pham's argument that discarding his sample constituted spoliation of evidence, inasmuch as Pham was sanctioned because he left the test center, not because his sample tested positive. *Id.* at 29. The Board *sua sponte* reviewed the FAA's revocation sanction and reduced it to a 180-day suspension, identifying two "mitigating factors." *Id.* at 31–32. First, there was no clear evidence that Pham was informed he could drink

water to produce another sample. *Id.* at 31. Second, Pham could have been confused by West's statement that he would need a new form if he returned, because Pham may have interpreted that as a suggestion that a new test was possible. *Id.* at 32.

Pham petitioned for review, and the FAA filed a cross-petition for review.

## III.

The court must uphold the Board's decision "unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or 'unsupported by substantial evidence.'" *Huerta v. Ducote*, 792 F.3d 144, 153 (D.C. Cir. 2013) (quoting 5 U.S.C. § 706(2)(A), (E)) (internal citations omitted). This court will "'defer to the wisdom of the agency, provided its decision is reasoned and rational . . . .'" *Dillmon v. NTSB*, 588 F.3d 1085, 1089 (D.C. Cir. 2009) (quoting *Chritton v. NTSB*, 888 F.2d 854, 856 (D.C. Cir. 1989)).

## A.

Pham principally contends that the Board lacked substantial evidence to conclude that he refused a drug test because he was not given a shy-bladder warning and was allegedly given permission to leave. He also contends that the sample collector "spoliated" evidence, Pham Br. 41, and that the Board applied a strict-liability standard, both of which violated his constitutional rights. None of these challenges is persuasive.

Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chritton*, 888 F.2d at 856 (internal citation and

quotation marks omitted). The court must accept all "reasonable credibility determinations" made by the ALJ and approved by the Board. *Dickson v. NTSB*, 639 F.3d 539, 542 (D.C. Cir. 2011) (internal citation and quotation marks omitted). Here, the ALJ evaluated the entire record as well as various inconsistencies in testimony. The ALJ reasonably found that West was more credible than Pham and concluded that, in violation of 49 C.F.R. § 40.191(a)(2), Pham had refused a drug test by failing to remain at the test center until the testing process was complete. NTSB Hearing Tr. (Nov. 23–24, 2020) at 156–61. The Board stated that it deferred to the ALJ's credibility findings and agreed that Pham had refused a drug test. *See* NTSB Order at 1–2, 21. In addition to West's testimony, other evidence adequately supports this finding. For example, the Custody and Control Form stated that Pham refused a drug test, *id.* at Exh. A-2, and West testified that the form reflected her recollection of events, *id.* at 28–29. Private Jets' drug testing manager, Cindy Boone, testified about her telephone call with West as reflected in Boone's email to the FAA. *Id.* at 61, 64, Exh. R-6. And Pham admitted that he left the test center without providing a sufficient urine sample. *Id.* at 117–18.

Undeterred, Pham contends that the Board had no factual basis for its refusal finding because he did not receive the shy-bladder instructions required by 49 C.F.R. § 40.193(b)(2). The Board acknowledged that the record was unclear but found that the test collector "explained the most important part: leaving before providing an adequate sample constitutes a refusal." NTSB Order at 25. The Board reasonably concluded that because the sanction was premised on Pham leaving the test center before completing the testing process, *see* NTSB Hearing Tr. (Nov. 23–24, 2020) at 159–60 (citing 49 C.F.R. § 40.191(a)(2)), the collector's failure to mention shy-bladder procedures was "not fatal to the [ALJ's]

determination" that Pham had refused a drug test, NTSB Order at 24. As to Pham's testimony that the test collector gave him permission to leave when she said he would need a new form to return, the Board acknowledged that this statement might confuse a "reasonable person" by suggesting that a "new test was possible." *Id.* at 25. But that confusion did not alter the fact that Pham was "notified [] that if he left the facility, it would be a refusal," *id.* at 22–23, yet still "left the testing facility without providing an adequate specimen and[,] therefore, violated the applicable regulation," *id.* at 25. And contrary to Pham's contention, there is no inconsistency between the ALJ's finding that Pham was advised that his leaving the facility would constitute a refusal to test and the finding that Pham was advised he would need a new confirmation form if he returned: the need for a new confirmation form for a *future* test is fully consistent with treating a departure from the facility as a refusal to complete the *current* test.

Pham contends that the claims against him should have been dismissed because the test collector disposed of his sample in violation of 49 C.F.R. § 821.19(c), and that although 49 C.F.R. § 40.193(b)(1) requires disposal of insufficient specimens, the provision is unconstitutional because it destroys exonerating evidence in violation of the Due Process Clause of the Fifth Amendment. The Board reasonably concluded there was no violation of 49 C.F.R. § 821.19(c); the regulation prohibits disposal of specimens only when a judge orders production of the specimen or there is a timely request to preserve the sample, neither of which occurred here. NTSB Order at 29. Pham's constitutional objection is meritless; the urine sample could not have been exculpatory because the issue is not whether the sample was positive but whether Pham refused a test by leaving the test center before the process was

complete. *Id.* In any event, Pham cites no precedent holding that disposal of an insufficient sample is unconstitutional.

Nor, contrary to Pham's view, did the Board apply a strict-liability rule in violation of its own precedent and the Due Process Clause. Rather, the Board noted that the ALJ "considered the witnesses' testimonies, assessed the witnesses' credibility, reviewed the exhibits, and weighed the parties' arguments," *id.* at 28, and relied on evidence that Pham was warned that leaving the test center before providing an adequate sample would constitute a refusal to test, *id.* at 25.

The court therefore denies Pham's petition for review.

**B.**

In its cross-petition, the FAA contends that the Board acted contrary to law by reducing Pham's sanction from revocation of his certificates to a 180-day suspension. In particular, the Board is required to defer to the FAA's sanction determination if it is reasonable, but the Board did not exercise deference. Further, the FAA contends that the Board acted contrary to law by suspending Pham's medical certificates for 180 days because FAA regulations make Pham ineligible to hold such certificates for two years. The FAA contends that the Board's choice of sanction was also arbitrary and capricious because it deviated from Board precedent.

**1.**

The Federal Aviation Act, 49 U.S.C. §§ 40101 *et seq.*, creates a "'split-enforcement'" regime in which the FAA has regulatory and enforcement authority, and the Board has adjudicatory authority. *Garvey v. NTSB*, 190 F.3d 571, 573 (D.C. Cir. 1999) (quoting *Hinton v. NTSB*, 57 F.3d 1144, 1147 n.1 (D.C. Cir. 1995)). In *Martin v. Occupational Safety &*

*Health Review Commission*, 499 U.S. 144 (1991), the Supreme Court held that the agency with adjudicative power in a split-enforcement regime would play a role similar to a "*court* in the agency-review context" and review the rulemaking agency's interpretations of its rules "only for consistency with the regulatory language and for reasonableness." *Id.* at 154–55. This court has similarly held that the Board and the court "must defer to the FAA's interpretations of its own aviation regulations." *Garvey*, 190 F.3d at 577 (citing *Martin*, 499 U.S. at 147, 150–57). FAA guidance provides that revocation is an appropriate sanction for refusal to test. U.S. Department of Transportation, FAA Order 2150.3C, at 9-14, Fig. 9-5(11) (Sept. 18, 2018). So, the FAA contends that the Board improperly "substituted its own judgment for the [FAA's]" in adjusting the sanction, exceeding its role in the split-enforcement regime. FAA Br. 38.

Pham's case, however, differs from *Martin* to the extent the FAA seeks deference to its application of a policy statement that guides its enforcement discretion rather than an interpretation of its rule as in *Martin*, 499 U.S. at 148–49. Further, the rulemaking agency's interpretation in *Martin* was issued as part of a formal citation against an employer. *Id.* at 157. "[L]ess formal means of interpreting regulations," such as "enforcement guidelines," are "entitled to some weight on judicial review" but "not entitled to the same deference" as a formal citation. *Id.* As such, the approach in *Martin* instructs deference to FAA's enforcement guidelines and sanction determination but does not specify the level of deference the Board owes. Still, the Supreme Court has held that courts should overturn an agency's choice of remedy only if it "is unwarranted in law or is without justification in fact." *American Power & Light Co. v. SEC*, 329 U.S. 90, 112–13 (1946). Because the Board essentially acts as a court in the split-enforcement regime with the FAA, *Martin*, 499 U.S. at

154, this standard guides the court's review of the Board's sanction decision.

Although the Board states it deferred to the FAA's choice of sanction, *see* NTSB Order at 31, and lists two mitigating factors that may cast doubt on the FAA's sanction, *id.* at 31–32, it adjusted the sanction without finding that the sanction is unwarranted in law or without justification in fact. 14 C.F.R. § 120.11 provides that a refusal to test is grounds for "revocation of any [airman] certificate," and 14 C.F.R. §§ 67.107(b)(2), 67.207(b)(2), 67.307(b)(2) provide that a refusal to test in the prior two years disqualifies a pilot from holding medical certificates. The FAA's sanction had justification in fact, as the FAA found that Pham had been warned that leaving the test center before providing a sufficient urine specimen would be considered a refusal to test but he left anyway. Revocation Order at 2. The FAA concluded this demonstrated that Pham lacked "the degree of care, judgment, and responsibility required of a certificate holder." *Id.* at 4. "Air safety depends on the willingness of certificate holders . . . [to submit] to drug tests," and Pham's refusal "betray[ed] the public trust." *Id.* Pursuant to 49 U.S.C. § 44709(b)(1), the FAA can revoke certificates upon determining that "safety in air commerce or air transportation and the public interest" require revocation.

The Board failed, however, to acknowledge the FAA's policy rationale for revoking Pham's license or to explain why those reasons were inapplicable or unjustified in Pham's case. Pham's reliance on the 2012 Pilot's Bill of Rights, which removed a statutory provision requiring the Board to defer to the FAA's interpretations of sanction guidance, Pub. L. 112-153, § 2(c)(2), 126 Stat. 1159, 1161 (2012) (amending 49 U.S.C. § 44709(d)(3)), does not advance his challenge to the FAA's cross-petition. Removing a provision that provided for

deference is not the equivalent of enacting a contrary provision disallowing deference, and Pham identifies no reason the court should read the removal of the provision in this situation as an attempt to preclude deference by the Board. In fact, there is at least some indication in the legislative history that the provision was removed only because it was deemed superfluous in light of *Martin*. *See* 158 Cong. Rec. S4733 (daily ed. June 29, 2012) (statement of Sen. Rockefeller and concurrence of Sen. Inhofe); *id.* at H5102 (daily ed. July 23, 2012) (statement of Rep. Bucshon).

Pham's position that FAA Order 2150.3C is invalid because it is a legislative rule promulgated without notice and comment and the FAA's "enforcement practice [is] to always seek a revocation," Pham Reply Br. 37, misrepresents FAA Order 2150.3C, which provides that refusal to test "generally," but not categorically, warrants revocation, FAA Order 2150.3C at 9-13, 9-14. This is a classic example of a policy statement that does not require notice and comment. 5 U.S.C. § 553(b); *see Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 93–94 (D.C. Cir. 1997).

Because the Board's decision did not accord appropriate deference, its modification of the FAA's sanction, on the reasoning it offered, was contrary to law.

**2.**

The FAA's challenge to the Board's suspension of Pham's medical certificates is persuasive. FAA regulations provide that an airman who has refused a drug test in the preceding two years is automatically ineligible to hold a medical certificate. 14 C.F.R. §§ 67.107(b)(2), 67.207(b)(2), 67.307(b)(2); *see also id.* §§ 67.101, 67.201, 67.301. Because the Board lacks the authority to invalidate FAA regulations, *see Adm'r v. Ewing*, 1

N.T.S.B. 1192, 1194 (1971); *see also Garvey v. Kraley*, NTSB Order No. EA-4581, 1996 WL 785071, at *1 n.3 (Aug. 18, 1997) (citing *Ewing*, 1 N.T.S.B. at 1194), it was required to apply the FAA's medical certificate eligibility requirements. The Board's Order is contrary to law insofar as it allows Pham to hold medical certificates between 180 days and 2 years after he refused a drug test.

The court need not address whether the Board's decision to adjust the sanction deviated from Board precedent, because the court is instructing the Board on remand to manifest proper deference to the FAA's sanction choice and review it only for justification in law and fact. The Board's role in the split-enforcement regime may require it to deviate from its own precedent if the FAA has taken a different but reasonable position. "[C]onsistency with the FAA's position is more important than consistency with the Board's own." *Garvey*, 190 F.3d at 584.

Accordingly, the court denies Pham's petition for review, grants the FAA's cross-petition for review, and vacates the Board's Order in part. The court remands this matter to the Board for further proceedings consistent with this opinion.